307 So.2d 291 (1975)
STATE of Louisiana
v.
Ronnie L. SCOTT and Ulysses Bazile.
No. 55194.
Supreme Court of Louisiana.
January 20, 1975.
*293 Edward C. Keeton, Marrero, for defendant-appellant Ronnie L. Scott.
E. Howard McCaleb, III, New Orleans, for defendant-appellant Ulysses Bazile.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Robert A. Petrie, Jr., Asst. Dist. Atty., Abbott J. Reeves, Director, Research and Appeals Div., Gretna, for plaintiff-appellee.
BARHAM, Justice.
The defendants were convicted after a trial by jury of armed robbery, a violation of La.R.S. 14:64. Defendant Bazile was sentenced to forty-five years' imprisonment, and defendant Scott received a fifteen year sentence. On this appeal they rely upon two bills of exceptions for a reversal of their convictions and sentences.
On the evening of July 13, 1972, four young Black males, some of whom were described as wearing hillbilly hats and tank shirts, robbed the cashier of a hardware and liquor store in Gretna, Louisiana and absconded with a stolen gun and some money. Officer Dugas of the Gretna Police Department was the first officer to arrive at the scene of the crime and he obtained a description of the perpetrators from the victims. After reporting the robbers' descriptions to the police dispatcher and completing the necessary reports, the officer returned to his routine patrol. Approximately forty-five minutes later Officer Dugas spotted an automobile containing numerous Black males, some of whom appeared to be wearing the type hat reportedly worn by the robbers. The officer pursued the car and observed that one of the men in the front seat removed a hat and threw it on the floor. Dugas stopped the car and, with the help of other officers who responded to his radio call for assistance, succeeded in getting the seven occupants of the car to exit the vehicle. Through the open front door on the right hand side of the car Officer Dugas observed a felt hat and a pistol on the floor of the car. He found a roll of quarters near the automobile and also recovered a straw hat and another roll of quarters in the back seat of the automobile. Three of the car's seven occupants, two of whom are the defendants in the instant case, were arrested for the liquor store robbery. The defendants' trial, convictions and sentences followed.

BILL OF EXCEPTIONS NO. 1
Bill of Exceptions No. 1 was reserved when the trial court denied defendants' motion to suppress the evidence recovered at the scene of the arrest. The defendants contend that Officer Dugas did not have probable cause to stop the automobile in which they were travelling and that the subsequent search of the automobile and seizure of evidence were therefore illegal.
The threshold issue to be determined is whether the police action in stopping the vehicle wherein the defendants were found was consistent with the Fourth Amendment to the United States Constitution. The resolution of this issue is crucial, for we determine from the testimony at the hearings on the motion to suppress that the items seized by the police were either located in "plain view" or were found during the course of a consent search.[1] Therefore, as to the items *294 seized as a result of their presence within the officer's "plain view," it is only necessary to determine that Officer Dugas had a right to be at the place from which he obtained the "plain view" of the seized objects.
We are not required to determine whether Officer Dugas had probable cause to stop the automobile in which the defendants were riding; in situations where it is necessary to determine the legality of an investigatory stop such as the one under consideration, the standard to be applied is whether the circumstances indicate that the stop was made with reasonable cause or adequate grounds. The police officer effecting the investigatory stop must have knowledge of suspicious facts and circumstances sufficient to justify intrusion upon the individual who possesses the right to be free from governmental interference. See State v. Saia, 302 So.2d 869 (La.1974). In the case we consider, Officer Dugas had received firsthand descriptions from the victims indicating that some of the four young Black robbers wore hillbilly type hats. Shortly thereafter he saw an automobile containing numerous young Black men, some of whom appeared to him to be wearing that particular type hat. We hold that the officer had sufficient knowledge and reasonable cause to justify the investigatory stop which he conducted. It therefore follows that the evidence in "plain view" which was seized and the evidence found as a result of the "consent search" were admissible and that the motion to suppress was properly denied.
This bill of exceptions lacks merit.

BILL OF EXCEPTIONS NO. 2
In connection with this bill of exceptions the defendants contend that the trial court foreclosed their right to inquire into the possible racial prejudices of prospective jurors when it sustained the State's objection to the following question: "Would you have any feelings if your son and daughter would start dating a colored person?" Apparently relying upon the exchange which took place among themselves, the court and the prosecutor, the defendants allege that the court action in sustaining the State's objection to the above-quoted question effectively foreclosed their right to inquire about possible racial bias and amounted to a ruling that the question was improper because armed robbery is not concerned with racial bias. The following exchange took place at the time the question was asked and the State's objection sustained:

"[DEFENSE COUNSEL]:
I understand. Would you have any feelings if your son and daughter would start dating a colored person?
"[PROSECUTOR]:
Your Honor, the State hates to object to voir dire questions but I see no bearing of this line of questioning.
"[DEFENSE COUNSEL]:
If Your Honor please, in the case of Hamm versus South Carolina, that's [409 U.S. 524] 93 Supreme Court, 848, [35 L.Ed.2d 46], which was decided on January 17th, 1973, the Supreme Court held that it was error for the courtif the State was to permit a jury trial and if the State was to allow questioning of counsel, that it was error in relation to the 14th amendment not to go into the question of racial bias. I think I'm well founded.
"[PROSECUTOR]:
I don't think this case concerns any racial prejudice, Your Honor. This is a case of armed robbery. It's not a case of rape or some other crime that would be involved.
"[DEFENSE COUNSEL]:
If Your Honor please the two people on trial are colored persons and I think I'm permitted to go into that based on that case.
"THE COURT:
I sustain the objection of the State."
*295 La. Code of Criminal Procedure article 786 provides that "* * * The scope of the examination [of prospective jurors on voir dire] shall be within the discretion of the court. * * *" A ruling by the trial court in connection with counsel's conduct of voir dire examination should not be disturbed by a reviewing court as long as the trial court has allowed counsel a wide latitude in examining jurors and has exercised a liberal discretion in delimiting the scope of the inquiry. See State v. Jones, 282 So.2d 422 (La.1973).
It is the opinion of the Court that the trial court did not abuse the discretion vested in it under La.C.Cr.P. art. 786 by disallowing the above-quoted question. While we recognize a criminal defendant's right to ascertain any racial bias against him and his concomitant right to elicit information which would enable him to intelligently exercise his peremptory challenges, we hold that the disallowed question was irrelevant, inflammatory, and misleading insofar as the issue of racial bias was material. The court's ruling on the State's objection did not preclude later relevant and rational inquiry into the matter of possible racial bias, had the defendants chosen to make such inquiry.
A fair reading of the exchange which transpired prior to the court's ruling sustaining the State's objection to the defendants' question shows that the effect of the ruling was to sustain the State's objection that the question lacked relevance. We do not agree that the ruling on the State's objection is tantamount to a ruling of impropriety on the grounds that armed robbery is not concerned with racial prejudice.
The defendants further argue that the trial court erred in denying the motion for mistrial made at the conclusion of the jury selection; the motion was based on the defendants' alleged inability to determine possible racial bias of prospective jurors which allegedly resulted from the trial court's refusal to allow inquiry regarding racial prejudice. As we noted earlier, the trial court's disallowance of the irrelevant and misleading question which the defendants sought to ask did not preclude later rational inquiry regarding the issue of racial prejudice. The defendants' failure to make further inquiry within permissible bounds did result in somewhat less than a satisfactory examination of the prospective jurors on the racial prejudice issue.[2] Acknowledging this, we note that the trial court could have recognized the defendants' failure to make sufficient inquiry and could have granted the mistrial sought on the basis of defendants' failure to ascertain the racial bias of the empanelled jurors. However, we are unable to hold that the trial court's refusal to grant a mistrial was reversible error. The situation which existed was a result of the defendants' own errors; we cannot reverse the convictions and sentences we review on the basis of those errors and misjudgments not attributable to the State.
We finally consider defendants' argument that Ham v. South Carolina, 409 *296 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973) is dispositive of the issue we consider. We hold that the Ham case is inapposite. In that case the trial court had sole responsibility for conducting the voir dire examination of prospective jurors; its refusal to ask the submitted questions relative to racial bias necessarily left unexplored the issue of possible prejudice based on the defendant's race. The United States Supreme Court's holding that the trial court's refusal to make any inquiry into the jurors' possible racial bias in the face of the defendant's request violated defendant's constitutional right to due process is simply inapplicable to the facts of the case we consider.
Under the particular circumstances present in this case we hold that the trial court did not commit reversible error in sustaining the State's objection to defendants' particular voir dire inquiry or in denying defendants' motion for a mistrial.
This bill of exceptions is without merit.
For the reasons assigned, the defendants' convictions and sentences are affirmed.
SUMMERS, J., concurs in the result.
NOTES
[1] In brief the defendants challenge the claim made by Officer Dugas at the hearing on the motion to suppress that the driver of the automobile consented to a search of the car; the defendants call attention to the driver's trial testimony denying that he consented to the search of the car. However, the ruling complained of is the trial court's denial of the motion to suppress; at the hearing held thereon, the defendants failed to carry their burden of proving an illegal search and seizure. See La.C.Cr.P. art. 703. Testimony tending to establish lack of consent should have been presented by the defendants at the hearing on the motion to suppress.
[2] We note that defendants did inquire, without objection, of some prospective jurors as follows:

"* * * is there any reason that you know of that wouldn't allow you to give these two men a fair and impartial trial free from either sympathy or prejudice? No reason at all?"
* * * * *
"Is there any reason that you know of why you could not give Ronnie Scott and Ulysses Bazile a fair and impartial trial? A trial free from prejudice or favor? Any reason why you couldn't do that?"
The trial court, both during consideration of defendants' motion for mistrial and in its per curiam to this bill of exceptions, opined that these questions constituted adequate inquiry into the area of possible racial bias. We do not agree that these questions adequately cover the subject. Had the defendants attempted to ask rational and relevant questions in an effort to discern racial bias and been refused that right on the grounds that the above-quoted questions properly covered inquiry concerning racial bias, a result different from that we reach here would be required.