308 So.2d 790 (1975)
STATE of Louisiana
v.
Alan A. JONES.
No. 55455.
Supreme Court of Louisiana.
February 24, 1975.
*791 John G. Williams, Natchitoches, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ronald C. Martin, Dist. Atty., R. Raymond Arthur, Asst. Dist. Atty., for plaintiff-appellee.
BARHAM, Justice.
Alan A. Jones was convicted after a bench trial of possession of marijuana, a violation of La.R.S. 40:966(C), and was sentenced to six months in the parish jail. This Court does not have appellate jurisdiction over a case in which the sentence is six months or less. La.Const. Art. VII, § 10(5) (1921) (the constitution applicable to this case). We therefore treat this matter as a timely application for writs. See State v. Duplantis, 296 So.2d 818 (La. 1974).
The marijuana gleanings which form the basis for this prosecution were found in the seam of the defendant's shirt pocket on the night of his arrest. On that date the defendant and four companions visited a house about ten miles outside of Natchitoches which was suspected of containing large quantities of marijuana. The house had been kept under intermittent surveillance and the officers conducting the surveillance testified that during the course of the evening they had seen different cars parked at the house and observed that some of the cars earlier seen had departed. During one of their rides past the house the officers saw the car in which the defendant was riding parked at the house. A few minutes later they noted the car leaving the residence. The officers followed the car in an unmarked vehicle and ultimately radioed for a marked car with flashing lights to effect a stop for them. Upon stopping the car in which the defendant and his four companions were travelling, the officers approached the vehicle. One of the officers allegedly smelled the odor of what he believed to be marijuana emanating from the car and also allegedly saw marijuana seeds when he focused his flashlight beam on the front floorboard of the car. The occupants of the car were then arrested and later searched at the police station; the gleanings of marijuana which form the basis of the defendant's prosecution were found in the seam of his shirt pocket.[1]
The only issue presented for our review is the propriety of the trial court's action in denying defendant's motion to suppress the evidence against him which was seized. Defendant contends that the stop of the automobile in which he was riding was made without probable cause and that the search and seizure which yielded the marijuana gleanings on which the prosecution is based were likewise illegally conducted.
Initially we note that law enforcement officials need not have probable cause to make an investigatory stop; it is only necessary that such a detention be effected upon adequate grounds or reasonable cause. See State v. Scott, 307 So.2d 291 (La.1975), decided January 20, 1975. We determine however, that in the circumstances presented to us the officers did not have adequate grounds to effect the stop of the automobile in which the defendant was travelling.
In reaching our conclusion that the motion to suppress was improperly denied, we remain aware of the fact that the trial court is vested with much discretion in its determination of the credibility of witnesses, the issue upon which our determination of its error largely rests. However, this Court is required to review "judge questions" of law and of fact and in our present review, as in any other, we *792 are required to make a contrary factual determination when we find that the bounds of that discretion have been exceeded and the record before us mandates such a result.
During the hearing on the motion to suppress, Officer Dison, one of the officers who followed the car in which defendant was riding, testified that it was the officers' intention to stop the vehicle from the moment they started to follow it from the residence under surveillance; Officer Dison testified that he and his partner in the unmarked vehicle were unable to stop the car themselves because their vehicle had neither red flashing lights nor a horn which would have enabled them to do so. The arresting officers contended that an additional reason for stopping the car was their observation that several times during the nearly ten-mile trip to Natchitoches, the car crossed the center line which separates the two lanes of traffic. However, the testimony of Officer Dison, the only officer who testified at the original hearing on the motion to suppress, revealed that the road over which the defendant and his companions travelled to reach Natchitoches was hilly and winding.[2] We note that such road conditions do not facilitate driving which perfectly conforms to the contours of the road.
While both Officers Dison and Perot testified that they saw the automobile cross the center line on a few occasions during the ten-mile trip into Natchitoches, we observe that the officer who was requested to effect the stop testified that he saw no erratic driving during the period of time when he followed the car prior to stopping it. Further, three of the occupants of the car testified at the hearing on the motion to suppress that the car was driven in a normal manner on the evening of the stop and was not operated in an erratic fashion. One of the female occupants particularly testified that she watched the road during the entire trip into Natchitoches and was certain that she would have noticed any unusual driving.
After a careful review of the testimony taken at the hearing on the motion to suppress, we find that substantial portions of the officers' testimony was basically contradictory, highly incredible, and wholly unworthy of belief. One of the pursuing officers, Perot, testified that he smelled marijuana when he approached the stopped car; however, Officer Dison, who also went up to the car, could only testify that Perot smelled the marijuana. Officer Perot testified that "* * * we could see seed material in the car. On the floorboard, it appeared like marijuana."; Officer Dison testified that the seed material was found on the floorboard during what was described as a "preliminary search" of the car. These and other substantial inconsistencies appear throughout the testimony taken at the hearing. As already noted, Officer Dison testified that it was the officers' intention to stop the vehicle in any case, without regard to the alleged erratic movements of the car across the center line.[3] Officer Perot testified that this *793 was not the officers' intention and stated that the decision to stop the vehicle was not reached until after the erratic driving was observed.
We find under these circumstances that the intent to stop the car existed from the moment the officers began to follow it, and we hold that the testimony concerning the crossing of the center line is not a sufficient basis for finding legal cause to stop the vehicle in which the defendant was riding. We cannot allow this highly suspect testimony to supply the reasonable cause necessary to validate such an investigatory stop when it is so clear that the officers' claim of erratic driving was no more than a pretext by which they sought to justify the stop and search of the automobile. Cf. State v. Lawson, 256 La. 471, 236 So.2d 804 (1970). Given the pre-existing determination that the automobile was to be stopped, the alleged intervening occurrence of crossing the center line, if it indeed occurred, was of no more than negligible importance and did not constitute reasonable cause to stop and search the vehicle. This being so, the alleged "plain view" of the marijuana seeds on the floorboard and the other suspicious circumstances allegedly observed were illegal observations and could not form the basis for the further detention and search of the defendant, Alan A. Jones. See State v. Scott, supra. The protections afforded by the Fourth Amendment are too important and integral a part of our heritage to permit their vitiation by means of pretext and subterfuge.
For the reasons stated, we hold that the trial court erred in denying the defendant's motion to suppress. The defendant's conviction and sentence are therefore reversed and the case remanded for further proceedings consistent with the views herein expressed.
Reversed and remanded.
SANDERS, C. J., dissents with written reasons.
SUMMERS, J., dissents and assigns written reasons.
MARCUS, J., dissents and assigns written reasons.
SANDERS, Chief Justice (dissenting).
An investigatory stop of an automobile, as the majority correctly notes, requires only reasonable cause or adequate suspicious circumstances. The more stringent standard of probable cause is inapplicable. State v. Scott, La., 307 So.2d 291 (1975).
Here, the officers received information from a reliable informant that narcotics activities were taking place at a residence near Natchitoches. While several officers proceeded with the mechanics of getting a search warrant for the residence, other officers placed the residence under surveillance. The officers at the residence determined that it was occupied by certain known narcotics users. When the car in which defendant was a passenger left the house, the officers followed it. On several occasions, according to the officers' testimony, *794 they observed the car weave across the center line of the highway.
The officers stopped the car. Upon approaching the car, the officers immediately smelled marijuana. Looking into it through the open door, the officers observed what appeared to be marijuana particles and seeds on the floor. The officers then placed the occupants under arrest. Upon searching the defendant, Jones, they found marijuana in his shirt pocket. It is on this marijuana, found in defendant's pocket, that the present charge is founded.
The occupants of the car denied that it had been driven erratically and that there was an order of marijuana in the car.
If the testimony of the police officers is accepted, there can be no doubt that they had reasonable cause to stop the automobile to investigate. Thus, an issue of credibility of witnesses is presented.
In resolving the conflict, the trial judge stated:
"[T]he Court is impressed with the testimony of Mr. Perot and Mr. Dison [the police officers] that they did smell marijuana, that the car was weaving back and forth across the road, and therefore it holds that there was reasonable cause for the stopping of the car."
In my opinion, the trial judge was in a much better position to determine credibility from his personal observation of the witnesses than is this Court on the cold record. I find no adequate reason to disturb his assessment of credibility or his factual findings.
For the reasons assigned, I respectfully dissent.
MARCUS, Justice (dissenting).
Under the facts and circumstances here presented, there existed probable cause to make an investigatory stop of defendant's vehicle. The defendant and his companions visited a house which had been under surveillance by the police because of their suspicion that it contained large quantities of marijuana. After defendant (and his companions) were seen leaving the house on the night in question, he was followed by the officers. During the course of this ten-mile ride, the officers several times observed the erratic movement of the vehicle. The car was stopped and the officers approached. One of the officers smelled the odor of what he believed to be marijuana emanating from the vehicle. The use of a flashlight revealed what appeared to the officer to be marijuana seeds on the front floorboard. The occupants of the car were then arrested and later searched at the police station. Gleanings of marijuana were found in the seam of defendant's shirt pocket.
Under these facts and circumstances, probable cause existed for the investigatory stop. The officer had a right to approach the vehicle. His use of the flashlight was proper. His plain view of what he believed to be marijuana on the front floorboard created probable cause to arrest. Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). After custodial arrest, the search of defendant's shirt pocket at the police station and the resulting seizure of the gleanings of marijuana taken from the pocket (the basis of the prosecution) were constitutionally permissible. Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914); Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925); Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed. 2d 427 (1973).
In my opinion, the motion to suppress was properly denied.
I respectfully dissent.
SUMMERS, Justice (dissenting).
For the reasons assigned by the Chief Justice and Mr. Justice Marcus, I dissent.
NOTES
[1] The Court has visually examined the physical evidence, the marijuana upon which this prosecution is based. In the corner of a small folded piece of paper, mixed in with matter which appears to be common lint, we observed a small number of particles, each about the size of a piece of course ground black pepper. This minute quantity is the basis of the instant prosecution for possession.
[2] There were two hearings held on the motion to suppress. The first resulted in denial of the motion but the matter was reopened by the court to allow additional testimony and witnesses.
[3] Officer Dison testified as follows at the hearing on the motion to suppress:

"Q. Why did you stop this particular vehicle?
"A. We observed the car cross the center line on numerous occasions, coming in to town, and also due to the amount of traffic that was coming in to this residence and leaving, and the amount of narcotics that was supposed to be present, we felt like this vehicle should be stopped.
"Q. You actually saw the vehicle weaving across the center line, is that correct?
"Q. Is it not true that you just stopped it because it was one of the vehicles coming from the house, and in fact it actually violated no rules of the road or traffic violations?
"A. We observed the car across the center line on ... I wouldn't say on just a whole lot of occasions, but we observed it cross the center line on a few occasions.
"Q. Were you going to stop this car anyway?
"A. Yes, sir, we were. * * *
"Q. Officer Dison, why was that vehicle stopped?
"A. The vehicle was stopped because of the traffic that was coming in and out of this apartment, because it was seen leaving this residence, and due to the amount of narcotics and drugs that were supposed to be present, and also due to the fact that the car did cross the center line on several occasions, as we observed it coming in to the city.
"Q. Was the primary purpose to stop it and search it for the determination if it had narcotics or contraband in the car?
"A. We were going to check it out. I wouldn't say we stopped it just to search it. but we wanted to check the car out.
"Q. You had already made up your mind to to do that?
"A. We were going to check it out, like I say. Due to the amount of drugs.
"* * *."