334 So.2d 182 (1976)
STATE of Louisiana
v.
James T. STRANGE.
No. 57459.
Supreme Court of Louisiana.
June 21, 1976.
*183 Robert A. Lee, Brown, Wicker & Lee, Monroe, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen. J. Carl Parkerson, Dist. Atty., Brian E. Crawford, Asst. Dist. Atty., for plaintiff-appellee.
SANDERS, Chief Justice.
The State charged the defendant, James T. Strange, with possession of amphetamines contrary to the provisions of LSA-R.S. 40:967. After his trial and conviction by a jury, the judge sentenced him to pay a fine of $300 plus costs, in default thereof to serve sixty days in jail, plus eighteen months imprisonment at hard labor, suspended. On appeal to this Court, the defendant consolidates his seven assignments of error into three arguments. We find merit in none of them, and accordingly, affirm his conviction and sentence.
ARGUMENT NO. 1
Defendant assigns as error the trial court's refusal to sustain his motion to suppress the drugs taken from his automobile. He contends that no probable cause existed for the arrest or for the search of his automobile and that the consent he allegedly gave for the warrantless search was not knowing or intelligent.
At the hearing on the motion to suppress, the burden of proof was on the defendant to prove the grounds of his motion. LSA-C.Cr.P. Art. 703. The trial court summarized the evidence, consisting of the testimony of two police officers and a female passenger in the car searched, as follows:
"The two policemen (a state trooper and a city detective assigned to the Narcotics squad) were not in uniform and were riding in an unmarked car on Louisville Avenue when they perceived a car ahead of them being operated in an erratic manner. The car was weaving and crossing the center line.
"They did not stop the car because they were in an unmarked car, but commenced following it while they radioed for a regular police car to intercept. After proceeding a mile or so, the car turned off the thoroughfare to a side street and finally stopped in front of a house, which was its destination. The officers promptly stopped, got out, approached the other car and identified themselves.
"Except for the weaving and the observation by one of the two officers that *184 an approaching car was forced to move out of the way, the driver safely manuevered the vehicle.
"Upon approaching the car, the driver was requested to get out and display his driver's license. The physical appearance of the driverthe defendantplus the odor of alcohol convinced the officers that the defendant was under the influence of some alcoholic beverage and should be arrested. It is not clear whether he was actually placed under arrest at this point.
"One of the officers looking through the front door which had been left open by the driver when he exited the car perceived what purported to be a marijuana seed on the front seat. Using his flashlight, he also saw what purported to be a marijuana roach in the ashtray.
"He then gave the defendant the customary Miranda Warning and asked the defendant for permission to search the car telling him what he had just observed and also telling him that he could require a search warrant. The defendant replied to the effect'Go ahead, I have nothing to hide.'
"The other officer who had been busy with other routine matters testified that although he did not hear the exact words quoted above, he did hear an affirmative reply to the request for permission to search.
"Thereupon the search was made resulting in the seizure of certain contraband which was listed on a report of the search. Defendant noted that this report while listing numerous other articles did not mention the marijuana seed originally found.
"Other uniformed policemen who had arrived had taken the female passenger into the house prior to the search.
"She testified that she was not present, did not hear the remarks about the marijuana or what transpired thereafter. Her testimony consisted of a description of the evening spent with the defendant at a local tavern where they had consumed several alcoholic drinks. She saw nothing unusual about his driving from the tavern to her house."
Citing State v. Jones, La., 308 So.2d 790 (1975), the defendant maintains that there was no probable cause to arrest him and further, that the testimony of the policemen was conflicting and incredible. We find the Jones case factually distinguishable. We found that the officers in Jones intended to stop the car from the moment they began to follow it as it proceeded away from the house that they had been keeping under surveillance for some time.
However, in the case sub judice, we uphold the trial court's finding that the officers' original observations of the defendant's vehicle was pure circumstance and that what attracted their attention was the erratic driving of the car. The officers did not suspect narcotics involvement, nor was there any pre-existing decision that the automobile would be stopped. We, therefore, find that probable case existed to stop the car.
We must next resolve the issue of the voluntariness of the consent to search the automobile given by the defendant. The defendant presented no evidence that he did not understand what he was doing. Although he had been drinking, that fact alone is insufficient to render his consent involuntary. See, e.g., State v. Sears, La., 298 So.2d 814 (1974). The officer's testimony that the defendant was told by him that he could require a search warrant and that he did not do so is uncontroverted. The defendant challenges the veracity of the officers because (1) they did not have with them a written consent to search form which they admittedly usually have and request parties to sign; (2) they failed to list the marijuana seed found on the seat of the car in their formal report; and (3) of the improbability of the officer being able to see the marijuana seed on *185 the car seat from his position outside the car. With regard to the first two, the record supports the trial court's ruling that "such indicates carelessness on the part of the officers, but is not indicative of a desire to falsify facts." As to the alleged improbability of seeing the marijuana seed under the circumstances described, the fact remains that both officers testified that they did see it. Buttressing their testimony is the fact that neither had been alerted to the possible presence of a controlled dangerous substance, and they had no reason to suspect that one was present.
On the basis of these findings, we are convinced that the consent was given freely and voluntarily, and the motion to suppress was properly denied.
ARGUMENT NO. 2
Shortly prior to the scheduled trial date, the defendant filed a motion for rehearing of the motion to suppress. On the day of trial, he filed a motion to have this second motion heard prior to the commencement of the trial. The court ruled that the allegations of fact in the motion, if accepted as true, were such that the earlier ruling of the court included their resolution against the defendant, and the court then overruled the motion without a hearing.
The basic factual premise underlying the new motion is the assertion that an earlier unfounded charge relating to controlled dangerous substances had been made against the defendant, but was subsequently dropped. From that premise, the defendant contended that the officers involved in the charge forming the basis for this prosecution had known his identity and had followed his car intending to stop it on the basis of preconceived suspicions of drug possession.
The trial court reasoned that if there had been an earlier charge against the defendant, he was certainly aware of that fact when the first motion to suppress was filed; accordingly, these allegations could not be considered to be "new evidence hitherto unavailable." The other allegations were merely conclusions based upon these facts. Further, the court held that even if the facts were true, independent reasons existed for the actions of the officers and the defendant had consented to the search which yielded the evidence. Finally, the officers both testified at the hearing on the first motion that they did not know the defendant prior to stopping him on the instant charge. The ruling on the first motion to suppress embraces the second motion. The second motion had no merit and the trial judge properly disposed of it within the exercise of his discretion under Article 703 of the Louisiana Code of Criminal Procedure.
The defendant also complains of a remark made by the prosecuting attorney in rebuttal closing argument. In the defense closing argument, the defense attorney inquired as to why the female passenger in the defendant's vehicle at the time of the arrest had not been called as a witness in the trial, inferring that she might have been a material witness that the State had deliberately excluded. In rebuttal, the prosecuting attorney commented:
". . . Additional statements were made by the defense counsel regarding. . . this girl, this missing girl. What possible value could she have been to the State as a witness? What possible value could she have been to you as a witness? The fact of the matter is that she testified in a preliminary examination in this matter. Her statement was, you know, to the effect . . . she made no testimony regarding anything of importance about the case. She was called by the defendant at the preliminary examination. Why isn't she called by the defendant to testify in the case today?"
Upon a defense objection, the judge admonished the jury that they were not to consider the attorneys' closing arguments *186 as evidence, since the attorneys were merely arguing their contentions.
The defendant argues that the remark violated the provisions of Article 774 of the Louisiana Code of Criminal Procedure, and further, that it warranted a mistrial, since it inferred that the defendant had failed in his responsibility to produce evidence, an incorrect inference because the State is the only party with a burden of proof to meet.
The remark is not included among the prohibitions of Article 770, the mandatory mistrial article of the Louisiana Code of Criminal Procedure. Under Article 771, the discretionary mistrial article, the judge's admonition to the jury sufficed to cure any prejudice, if the remark was even improper.
Article 774 of the Code of Criminal Procedure confines argument to the evidence admitted and to the lack of evidence, conclusions of fact and the applicable law; it also limits the State's rebuttal to answering the defendant's argument. The defense comment on the State's lack of evidence as demonstrated by its failure to call the woman as a witness was properly answerable by the State on rebuttal, as held by the trial judge. Moreover, the defendant does not allege or show any prejudice resulting from the remark.
ARGUMENT NO. 3
The defendant assigns as error the admission of evidence of his possession of marijuana in this trial for possession of amphetamines. He contends that the evidence was immaterial and prejudicial. We reject his arguments. The evidence was relevant to the issue of guilty knowledge or intent to possess amphetamines, since the possession of both drugs was simultaneous. See State v. Thorson, La., 302 So.2d 578 (1974); State v. Clouatre, 262 La. 651, 264 So.2d 595 (1972); State v. Richard, 256 La. 551, 237 So.2d 374 (1970). Although the possession of the marijuana was criminal, it had independent relevance to scienter, an essential element of the crime charged.
For the reasons assigned, the conviction and sentence are affirmed.
TATE, J., concurs as to Assignment No. 3: The marijuana may have been admissible as part of the res gestae, but not to show scienter.
DIXON, J., dissents as to argument No. 1.
CALOGERO, J., dissents, believing that bills 1 and 3 have merit.