383 So.2d 1226 (1979)
STATE of Louisiana
v.
John A. DUPART and Reginald Adams.
No. 64767.
Supreme Court of Louisiana.
November 12, 1979.
Dissenting Opinion May 23, 1980.
William Noland, New Orleans, for defendant-appellant Reginald Adams.
James S. Weidner, Jr., Gretna, for defendant-appellant John Dupart.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Abbott J. Reeves, William W. Hall, Asst. Dist. Attys., for plaintiff-appellee.
MARCUS, Justice.[*]
John A. Dupart and Reginald Adams were charged in the same information with simple burglary in violation of La.R.S. 14:62. Defendants pleaded not guilty at the arraignment. After the trial judge denied defendants' motions to suppress physical *1227 evidence, the state amended the information to charge defendants with receiving stolen things valued at two hundred dollars in violation of La.R.S. 14:69. Defendants moved to withdraw their former pleas of not guilty and to enter pleas of guilty to the amended charge, expressly reserving their right to appeal the court's denial of their pre-plea motions to suppress.[1] The trial judge accepted the pleas of guilty after determining that the pleas were made voluntarily with understanding of the nature of the charges. Dupart was sentenced to serve two years at hard labor; Adams was sentenced to serve eighteen months at hard labor. On appeal, defendants rely on two assignments of error for reversal of their convictions and sentences.

ASSIGNMENTS OF ERROR NOS. 1 AND 2
Defendants contend the trial judge erred in denying their motions to suppress physical evidence. They argue the police officers did not have reasonable cause to stop their automobile. Hence, the subsequent search of the vehicle was invalid and the items seized therein should have been suppressed.
At 10:29 on the night of September 26, 1978, Deputy Richard Schomaker, who had six years experience with the Jefferson Parish Sheriff's Office, was notified of a burglary in progress at 3730 Jean Street in Metairie, Louisiana. When he arrived at the scene, the deputy was advised by several officers already present that one or more suspects had fled on foot south from Jean Street and were being chased by several other officers. Deputy Schomaker proceeded south from Jean Street on Division Street. At Stefano Street, one block south of Jean Street, he observed a vehicle containing two occupants turn south from a stop sign on Stefano Street onto Division Street. The automobile was traveling at approximately ten miles per hour in a twenty mile per hour zone. Believing that the burglars might be in this slow-moving car, Deputy Schomaker decided to stop it and turned on his red light and sounded his horn. At this time, the vehicle accelerated to approximately thirty-five miles per hour and the deputy noticed a "great deal of activity inside the car." About four blocks further down Division Street, he managed to pull the vehicle over. The two occupants (defendants herein) were ordered out of the car and to place their hands on the police vehicle; the doors of defendants' vehicle were left open. The deputy quickly searched defendants for weapons and walked over to their car and noticed through an open door several pieces of jewelry on the right side of the front seat. The inside of the car was illuminated by its interior light. After other officers arrived to assist, Deputy Schomaker searched the vehicle and found more pieces of jewelry, a sledge hammer, two screw drivers, a flashlight and brown gloves.
In determining the validity of the warrantless search of the vehicle, there are three points in time which must be examined: the initial stop of the vehicle, the police officer's observation of the jewelry on the front seat, and the subsequent search of the vehicle. If the initial stop was not justified, then the subsequent acts are illegal fruits of the poisonous tree. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct is recognized by La.Code Crim.P. art. 215.1, as well as both the federal and state jurisprudence. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Chopin, 372 So.2d 1222 (La. 1979); State v. Drew, 360 So.2d 500 (La. 1978), cert. denied, 439 U.S. 1059, 99 S.Ct. 820, 59 L.Ed.2d 25 (1979). Probable cause is not required to justify an investigatory stop; reasonable suspicion is sufficient. Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); United States v. Hall, 557 F.2d 1114 (5th Cir. 1977), cert. denied, 434 U.S. 907, 98 S.Ct. 308, 54 L.Ed.2d 195 (1978); State v. Chopin, supra; State v. Drew, supra. Terry v. Ohio and *1228 Adams v. Williams approved investigatory stops of individuals based on reasonable suspicion. The standards set forth in Terry and Adams have been applied to the stopping of automobiles based on reasonable suspicion. United States v. Wright, 565 F.2d 486 (8th Cir. 1977), cert. denied, 435 U.S. 974, 98 S.Ct. 1621, 56 L.Ed.2d 67 (1978); United States v. Hall, supra; State v. Rogers, 324 So.2d 403 (La.1975); State v. Weathers, 320 So.2d 892 (La.1975); State v. Scott, 307 So.2d 291 (La.1975); State v. Herron, 301 So.2d 312 (La.1974); State v. Jefferson, 284 So.2d 882 (La.1973).
In the instant case, the police officer was justified in stopping defendants' vehicle for investigatory purposes. The officer spotted the vehicle in the immediate vicinity of the crime, in an area toward which the suspects had fled, immediately after the occurrence of the crime. They were driving very slowly. Moreover, defendants' conduct after the officer turned on his red light and sounded his horn was consistent with one who had just committed a crime. Defendants' attempt to escape and their activities in the car increased the officer's suspicion that the burglars were in the car. Clearly, the officer had reasonable cause to make an investigatory stop of the vehicle and to question defendants.
Having made the investigatory stop, Deputy Schomaker, through the open door in the lighted car, saw jewelry on the front seat. Objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure.[2]Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); State v. Rogers, supra; State v. Scott, supra; State v. Herron, supra; State v. Jefferson, supra.
We believe that the officer's observation of the jewelry on the front seat of the car together with the previous suspicious circumstances gave Deputy Schomaker probable cause to believe that evidence of the burglary was inside the vehicle. When probable cause exists for the searching of a vehicle and circumstances render securing a warrant impractical, a warrantless search of the automobile does not violate the fourth amendment. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); State v. Hollingsworth, 292 So.2d 516 (La.1974). In the instant case, the suspects' vehicle was stopped on a public street at night in the immediate area where the crime had just previously been committed. Clearly, the circumstances rendered securing a warrant impractical. Since there were probable cause and exigent circumstances, the warrantless search of the suspects' vehicle was not unconstitutional. The trial judge did not err in denying defendants' motions to suppress the evidence. Assignments of Error Nos. 1 and 2 are without merit.

DECREE
For the reasons assigned, defendants' convictions and sentences are affirmed.
DIXON, J., concurs with reasons.
CALOGERO, J., concurs and assigns reasons.
DENNIS, J., dissents and assigns reasons.
DIXON, Justice (concurring).
I respectfully concur.
The initial attempt to stop defendants was not unreasonable. State v. Jefferson, 284 So.2d 882 (La.1973). The use of the phrase "reasonable suspicion" to justify police intrusion, or a "stop" is, to my mind, dangerous. This is due principally to the proclivity of persons connected with law enforcement to seize on such catchy phrases as "stop and frisk" and "reasonable suspicion." These shorthand phrases are frequently interpreted too literally to give them real meaning.
*1229 The majority also cites Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), to support a proposition for which I do not think they stand. The two cases would permit police intrusion into privacy for reasons which did not constitute "probable cause" under the warrant requirements of the federal system. Nevertheless, both cases do require police intrusions into privacy which are less than custodial arrests to be governed by the constitutional standard of reasonableness. That standard, I believe, is met in the case before us.
That reliance on "stop and frisk" statutes is dangerous and confusing was specifically treated in Terry v. Ohio, where the court said:
"... There is some suggestion in the use of such terms as `stop' and `frisk' that such police conduct is outside the purview of the Fourth Amendment because neither action rises to the level of a `search' or `seizure' within the meaning of the Constitution. We emphatically reject this notion. It is quite plain that the Fourth Amendment governs `seizures' of the person which do not eventuate in a trip to the station house and prosecution for crime`arrests' in traditional terminology. It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has `seized' that person. And it is nothing less than sheer torture of the English language to suggest that a careful exploration of the outer surfaces of a person's clothing all over his or her body in an attempt to find weapons is not a `search.' Moreover, it is simply fantastic to urge that such a procedure performed in public by a policeman while the citizen stands helpless, perhaps facing a wall with his hands raised, is a `petty indignity.' It is a serious intrusion upon the sanctity of the person, which may inflict great indignity and arouse strong resentment, and it is not to be undertaken lightly.
. . . . .
In this case there can be no question, then, that Officer McFadden `seized' petitioner and subjected him to a `search' when he took hold of him and patted down the outer surfaces of his clothing. We must decide whether at that point it was reasonable for Officer McFadden to have interfered with petitioner's personal security as he did. And in determining whether the seizure and search were `unreasonable' our inquiry is a dual one whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place.
If this case involved police conduct subject to the Warrant Clause of the Fourth Amendment, we would have to ascertain whether `probable cause' existed to justify the search and seizure which took place. However, that is not the case. We do not retreat from our holdings that the police must, whenever practicable, obtain advance judicial approval of searches and seizures through the warrant procedure,... or that in most instances failure to comply with the warrant requirement can only be excused by exigent circumstances, . . . But we deal here with an entire rubric of police conduct necessarily swift action predicated upon the on-the-spot observations of the officer on the beatwhich historically has not been, and as a practical matter could not be, subjected to the warrant procedure. Instead, the conduct involved in this case must be tested by the Fourth Amendment's general proscription against unreasonable searches and seizures.
Nonetheless, the notions which underlie both the warrant procedure and the requirement of probable cause remain fully relevant in this context." . . . (Underscoring added).
. . . . .
... We merely hold today that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that *1230 criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.
Such a search is a reasonable search under the Fourth Amendment, and any weapons seized may properly be introduced in evidence against the person from whom they were taken." 88 S.Ct. 1868 at 1877, 1879, 1884-1885.
In the case before us, when the defendants Dupart and Adams discovered the presence of police, they began to do something in the automobile which could have been attempts to hide things from the police, and then fled the scene rapidly. The proximity of the defendants both in time and place to the scene of the burglary, added to their flight and furtive actions, and added to the fact that a burglary had occurred, to the knowledge of the policeman, was enough to create probable cause to stop them.
CALOGERO, Justice, concurring.
The trial judge did not err in refusing to grant the motion to suppress. The significant inquiry here is whether the officer made a lawful stop of defendant's vehicle. In my view he did. The articulable facts known by the officer and set forth fully in the majority opinion were sufficient to justify the intrusion attendant upon stopping the vehicle.
DENNIS, Justice, dissenting.
I respectfully dissent. The police officer did not have reasonable grounds to make the initial stop of the vehicle from which the evidence was seized. The motion to suppress, therefore, should have been granted.
In State v. Saia, 302 So.2d 869 (La.1974), this Court held that the police did not have "probable cause to arrest the individual or reasonable grounds to detain the individual" at p. 873, when the defendant Saia was seen leaving a residence which was a known drug outlet and turned to walk away when the police pulled up beside her in their police car. The facts in this case mandate the same result. The officer's only articulable reasons for stopping the car were that it was going at a slow rate of speed and it was relatively near the place where the burglary occurred. This was not sufficient to warrant the initial stop of the vehicle.
The majority opinion states: "Moreover, defendants' conduct after the officer turned on his red light and sounded his horn was consistent with one who had just committed a crime. Defendants' attempt to escape and their activities in the car increased the officer's suspicion that the burglars were in the car. Clearly, the officer had reasonable cause to make an investigatory stop of the vehicle and to question defendants." At p. 1228. In Saia, it was noted that once the officers caught the defendant and then saw the glassine envelope that they had probable cause to arrest. The evidence was held inadmissible, however, because of their initial actions in approaching Saia "under circumstances that [made] it seem that some form of detention [was] imminent" at p. 873, was not held to be a reasonable stop. In the instant case it may be true that once the car was stopped and the officer saw the jewelry in the car, he had probable cause to arrest. As in Saia, however, the officer did not have reasonable grounds to make the initial stop. The initial stop being illegal, the evidence seized as a result should not have been admitted at trial.
NOTES
[*] Chief Judge Paul B. Landry, Retired, is sitting by assignment as Associate Justice Ad Hoc in place of Tate, J., upon this case.
[1] State v. Crosby, 338 So.2d 584 (La. 1976).
[2] Apparently, Deputy Schomaker did not actually seize the jewelry from the front seat of the car at this time. The record indicates that, after Schomaker checked the vehicle, he waited for assistance to arrive. After assistance arrived, he made a search of the vehicle and seized all the items found therein.