496 So.2d 536 (1986)
Rhett R. RYLAND
v.
The LAW FIRM OF TAYLOR, PORTER, BROOKS, AND PHILLIPS, Eugene R. Groves, Frederick Tulley and Gulf States Utilities Company.
No. 85 CA 0848.
Court of Appeal of Louisiana, First Circuit.
October 15, 1986.
Writ Denied December 12, 1986.
*538 Rhett R. Ryland, and B. Dexter Ryland, Baton Rouge, for plaintiff-appellant Rhett R. Ryland.
W. Luther Wilson, Baton Rouge, for defendant-appellee The Law Firm, et al.
Before SAVOIE, CRAIN and JOHN S. COVINGTON, JJ.
CRAIN, Judge.
Plaintiff, Rhett R. Ryland, brought an action for malicious prosecution arising out of a disputed utility bill. Defendants are Gulf States Utilities, the law firm that represented GSU in the law suit to collect the disputed bill, Taylor, Porter, Brooks, and Phillips, and the two attorneys at Taylor, Porter that actually handled the disputed utility bill, Eugene R. Groves and Frederick Tulley. After trial on the merits, a jury found that GSU had instituted a malicious prosecution, while Groves, Tulley and the law firm of Taylor, Porter had not. The jury found that Ryland was at fault and barred him from collecting damages. From this judgment Ryland appeals.

FACTS
The heart of this controversy is the $707.86 monthly utility bill Ryland received on February 28, 1978. Ryland, a local attorney, owned a law office building in Baton Rouge. The previous utility bills had been averaging about $158 a month.
Ryland was convinced that the bill was erroneous and he contacted GSU about it repeatedly. The meter readings, which were the basis of the bill, were checked and double checked and found to be correct. The meter itself was tested by GSU and found to be accurate. Over a period of several months, different representatives of GSU, including its in-house counsel, discussed the bill with plaintiff. No serious attempt was made to negotiate a settlement. GSU insisted the entire bill was due and Ryland insisted that the bill had to be wrong.[1]
GSU turned the bill over to the law firm of Taylor, Porter, Brooks, and Phillips for collection. Eugene Groves, a member of Taylor, Porter, contacted Ryland. Groves took the position that the bill had to be paid in full. Ryland and Groves engaged in at least two conversations about the bill. The exact nature of these discussions is greatly disputed, but it is clear that they were fruitless. Groves sent Ryland a demand letter on June 21, 1978. This letter was sent as a prerequisite to a suit on an open account and the collection of attorney fees, in accordance with La.R.S. 9:2781.
Groves claims to have had nothing further to do with the case after sending the demand letter. He contends that he turned the file over to Frederick Tulley with instructions *539 to file suit as soon as the then existing 30 day grace period provided by La.R.S. 9:2781 had expired. Tulley had recently been assigned to handle Taylor, Porter's collection practice. Tulley testified that in August he instructed his secretary to call Ryland to inform him of the suit just before it was going to be filed. Ryland is adamant that he never received any notice that the suit was about to be filed. Instead, he maintains that he received a disconnect notice from GSU informing him that his office's electricity would be turned off on August 17th if his bill was not paid. He claims that representatives of GSU came to his office on August 16 to confirm that the utilities would be cut off the following day. GSU denies sending anyone to Ryland's office.
On the morning of August 17, Ryland walked from his office down the street to GSU's office to a teller's window and paid the entire outstanding bill.
Neither GSU nor Ryland contacted Taylor, Porter or Groves or Tulley to inform them that the bill had been paid. On August 23, 1978, Tulley filed suit on Gulf States' behalf. The suit against Ryland was published in the Baton Rouge newspapers' legal sections and in the Baton Rouge Daily Legal News. It was apparently common knowledge in the Baton Rouge legal community that Ryland had been sued by GSU for nonpayment of his utilities bill. Upon discovering that Ryland had previously paid the bill, Taylor, Porter dismissed the suit. Ryland sent Taylor, Porter a letter requesting that the judgment of dismissal explain that the suit was filed in error, but Taylor, Porter did not respond. In turn, Ryland filed the instant suit for malicious prosecution on September 28, 1978. Trial was not held until February, 1985.

ERROR
Ryland's appeal alleges the following assignments of error:
I. The trial judge erred in giving jury instructions that contributory negligence can defeat a finding of malicious prosecution.
II. The trial judge erred in giving jury interrogatories that included a question regarding fault of the plaintiff.
III. The jury erred as a matter of law in finding that contributory negligence can defeat a finding of malicious prosecution.
IV. The jury erred in finding that Eugene Groves, Fred Tulley and the law firm of Taylor, Porter were not guilty of malicious prosecution.
V. The jury erred in finding plaintiff was guilty of any contributory negligence that could defeat his recovery.
VI. The trial judge erred in allowing the law firm of Taylor, Porter to represent all defendants in view of a clear conflict of interest.[2]
VIII. The trial judge erred in charging the jury that the Canons of Ethics was applicable to bar plaintiff from paying his utility bill direct to Gulf States Utilities.
In their brief defendants-appellees contend that the jury erred in its finding against GSU.

MALICIOUS PROSECUTION

GSU
Defendants contend the jury erred in finding that GSU instituted a malicious prosecution. Six requirements must be satisfied before an action in malicious prosecution can be maintained. They are as follows:
(1) commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) *540 the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff.
Robinson v. Goudchaux's, 307 So.2d 287 (La.1975); Bessie v. K-Mart Apparel Fashions Corp., 472 So.2d 251 (La.App. 1st Cir.1985).
The first four elements of the action are not in doubt. Malice exists when charges and allegations in a suit are made that one knows to be false. Malice can be presumed where a lack of probable cause for filing a suit results from a reckless and inexcusable indifference of the rights of the party sued, indicative of a lack of caution and inquiry a prudent person would employ before suing someone. Robinson, 307 So.2d 291; Breda v. Attaway, 371 So.2d 1270 (La.App. 3rd Cir.1979). The test for probable cause is whether a reasonable man would have acted the same under the circumstances. Buisson v. Prestia, 45 So.2d 531 (La.App.Orl.Cir.1950).
GSU claims that its actions were not so unreasonable as to constitute malice. Clearly, GSU's actions constituted negligence, and there was no probable cause for instituting the suit. The jury determined that this negligence amounted to an inexcusable indifference of Ryland's rights. Our review of the record discloses that there is reasonable factual basis for this finding and that it is not clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
GSU received the disputed payment on August 17. Ryland testified he informed the teller the payment was delinquent. The payment was entered in GSU's computer. Payment history printouts made by GSU after payment, but before suit was filed, showed that the payment had been made, yet GSU never informed its attorneys of this fact.
GSU originally sent Taylor, Porter an unsigned itemized statement of account reflecting that the account was due and owing. Two days later, on August 22, GSU ran an updated check on Ryland's account in preparation for the suit. The clerk failed to notice that payments had been made and suit was filed.
GSU's defense is that the clerk checked the account, and saw that it showed an unpaid balance. She did not check the amount that was unpaid, and therefore, according to GSU, she had no reason to believe anything had changed.
The reason the account did not show paid in full was that Ryland owed $36.17 on his current bill for the month of August. Ryland had been paying his subsequent monthly bills on time, but the disputed portion was carried over on each new bill. His utilities were never disconnected. His August bill was due but not delinquent.
From these facts, the jury could have reasonably concluded that Gulf States' conduct showed a reckless and inexcusable indifference reflected by a lack of caution and inquiry a prudent person would ordinarily employ before suing someone. Robinson, 307 So.2d 291. The risk of harm that can result from filing a baseless lawsuit against anyone, but especially a professional person is great. A prudent person would ordinarily take great care when filing a lawsuit. GSU's clerk knew that Ryland was being sued for over $700, but when she reviewed his account two days later a $36 balance was allowed to justify the suit. A cursory inspection of the statement would have shown the discrepancy.
Additionally, GSU's collections department did not appear to have been structured with much concern or regard for events like these. Evidently, GSU's computers were not set up to automatically initiate an immediate inquiry whenever a payment was received on an account which had been turned over to an attorney for collection. Although a payment made directly to GSU, even after a demand letter had been sent would not be uncommon, and would probably be routine, Dennis Singletary, the person in charge of such matters for GSU admitted that no such procedural safeguards existed. When these facts are viewed in light of the presumption of malice, we cannot say that the conclusion of the jury is clearly wrong.

*541 TAYLOR, PORTER
Ryland contends that the jury erred in not finding the law firm of Taylor, Porter and Eugene Groves and Frederick Tulley guilty of instituting a malicious prosecution. We find no merit to this argument. Under the instant facts, it was well within the jury's province to find that in regard to these defendants' particular conduct, their negligence, if any, did not amount to a reckless indifference to Ryland's rights. The jury could have found they acted reasonably in relying on the information GSU had twice supplied them just prior to institution of the suit.
Ryland vigorously argues that Groves had assured him that no suit would be filed without some prior notification. The real issue here is whether such notice was received or not. It was hotly contested, and the testimony was directly conflicting. If Groves and Tulley failed to do so, then the jury might reasonably have held them liable. Obviously, the jury decided against Ryland on this point. This was essentially a credibility issue. The jury was in a much better position to make these determinations than we are. There is a reasonable factual basis to uphold this finding, and nothing to show that it is clearly wrong.

JURY INSTRUCTIONS
Most of Ryland's assignments of error deal with the issue of his own alleged contributory negligence. We note that plaintiff failed to timely object to the instructions given to the jury on the issue of contributory negligence. Ordinarily, plaintiff would have forfeited his right to raise these issues on appeal. La.C.C.P. art. 1793. However, plaintiff did timely object to one particular instruction regarding contributory negligence. We find this instruction was erroneously given and prejudicial. Consequently, the jury verdict is not entitled to any weight in this regard. Accordingly, we will address plaintiff's assignments in this area.

CANONS OF ETHICS
Plaintiff alleges that the trial court erred in instructing the jury that the Canons of Ethics, specifically, Code of Professional Responsibility DR 7-104(A)(1) prohibited Ryland from making the payments directly to GSU, instead of to Taylor, Porter, GSU's attorneys.
DR 7-104(A)(1) provides:
(A) During the course of his representation of a client a lawyer shall not:
(1) Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so.
The jury was instructed that because Ryland was an attorney, it could consider that he breached the Code of Ethics by communicating (paying the bill) with GSU, as GSU was a party which he knew was being represented by another lawyer.
Defendants maintain that, "[t]here is no suggestion that the obligations and practices change when an attorney is representing himself". While we agree with this statement, it ignores the fundamental question of whether or not Ryland was acting in a representative capacity on his own behalf, or, as he claims, "... an aggrieved individual with an exceptionally high utility bill".
Contributory negligence is an affirmative defense which the defendants have the burden of proving. There is no evidence in the record that Ryland was acting in a representative capacity as his own attorney at anytime. No testimony was elicited whatsoever in this regard. A prudent business person would not necessarily feel the need for legal representation until the time when he knew suit was going to be filed. At that point, he would either pay the bill as requested in the demand letter, or hire an attorney. This was no more than what Ryland actually did. Without proof of some overt act that only an attorney at law would undertake, the application of the Code of Ethics was inappropriate. Defendants argue that the instruction *542 was given only in order to show that Ryland breached a standard of care and custom in the community. However, we agree with plaintiff that the obvious implication was that he was guilty of unethical conduct, which could have highly prejudiced the jury against him.

CONTRIBUTORY NEGLIGENCE
Malicious prosecution is traditionally categorized as an intentional tort. The general rule is that contributory negligence is not a defense to an intentional tort. South Texas Lloyds v. Jones, 273 So.2d 853 (La.App. 2d Cir.1973). Louisiana has never recognized this defense. Hebert v. First Guaranty Bank, 493 So.2d 150 (La.App. 1st Cir.1986). The commentators agree that contributory negligence is also not a defense to:
[T]hat aggravated form of negligence, approaching intent, which has been characterized variously as `wilful,' `wanton,' or `reckless,' as to which all courts have held that ordinary negligence on the part of the plaintiff will not bar recovery. Such conduct differs from negligence not only in degree but in kind, and in the social condemnation attached to it.
Prosser & Keaton, Law of Torts (5th ed. 1984) § 65 p. 462. See Restatement (second) of Torts § 481. Accordingly, we find that the jury was erroneously instructed that contributory negligence is a defense to an action for malicious prosecution.
When a jury has been improperly instructed on the law, no weight should be accorded the judgment of the trial court and the verdict is not entitled to a presumption of regularity. Thomas v. Missouri Pacific R. Co., 466 So.2d 1280 (La.1985). In such cases, our supreme court has mandated that the appellate courts, in the interest of judicial economy, are not to remand the case to obtain a proper jury verdict, but are to conduct a trial de novo on appeal.[3]Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975). Rose v. State Farm Mut. Auto. Ins. Co., 468 So.2d 833 (La.App. 1st Cir.1985), writ denied 474 So.2d 1307 (La.1985). When the jury has made factual findings that are favorable to each party, each finding is to be evaluated in light of the erroneously given instructions. Those findings that are not affected by the instructions are entitled to the usual standard of review (manifest error). Picou v. Ferrara, 483 So.2d 915 (La.1986).
In the instant case we have determined that the initial findings regarding liability of the defendants are not affected by the erroneous instructions regarding plaintiff's alleged fault. The jury finding, that GSU showed a reckless indifference to plaintiff's rights, was made in response to an interrogatory concerning only GSU's conduct. Consequently, this finding was made independently of the issue of whether plaintiff's actions contributed to his damages. Therefore, we find no justification for disregarding the jury's answers to the interrogatories regarding the defendants' actions, even though we are setting aside those findings with reference to plaintiff's conduct. Picou, 483 So.2d 915.

DAMAGES
Where the record is complete and no damages were awarded because of an error, we are required to decide the damage issue, de novo, on appeal. Jones v. P.K. Smith Chevrolet-Olds, Inc., 444 So.2d 1372 (La.App. 2d Cir.1984).
As a result of the original lawsuit, Ryland claims to have suffered damage to his personal and professional reputation in the community, and a consequent loss of income. He argues that because the bill he was sued over was so large, it looked as though it was several months in arrears, making it appear that he could not pay his bills and was about to "go under". His practice largely consists of personal injury *543 referrals, and he claims other lawyers shyed away from risking a referral to him as it was thought he was experiencing financial difficulties.
Damages as a result of a malicious prosecution are presumed. Robinson, 307 So.2d at 290. Undoubtedly, Ryland's personal and professional reputations were damaged in some degree, as a result of the suit. However, there is no proof of such damages in the record, and it is questionable as to whether any appreciable injury was suffered. Ryland did not present any testimony that his standing in the community was actually diminished. In such cases, per Robinson, only nominal damages are to be awarded.[4] We consider a nominal award of $1500 for damage to his personal and professional reputation to be adequate.
Similarly, there is no evidence in the record that Ryland actually lost any business as a result of the suit. Without any evidence, such an award would be speculative. We decline to make any award for lost profits.
We do find sufficient evidence in the record to support an award for mental anguish, humiliation and embarrassment. There is testimony from witnesses that Ryland was extremely agitated and upset on several occasions at having been unjustly sued, and there is evidence that some attorneys had occasion to make light of his circumstances.[5] We feel that $7,500 would be adequate compensation.

DECREE
Accordingly, the judgment of the trial court as to Gulf States Utilities is reversed, rendering them liable for damages in the amount of $9,000. The judgment is otherwise affirmed. GSU is cast for costs.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.
NOTES
[1] Ryland almost certainly owed the full bill. It appears that earlier on in the year the meter was improperly read, making the bills for those months artificially low. Later, the correctly taken meter reading for February compensated for the prior inaccuracies and resulted in one very large bill.
[2] Having rendered a judgment for plaintiff on appeal, we deem it unnecessary to address this assignment of error.
[3] One exception to this rule is that remand is warranted where the weight of the evidence is so nearly equal, that a first hand view of the witnesses is essential to a proper resolution of the issue. Ragas v. Argonaut Southwest Ins. Co., 388 So.2d 707 (La.1980). We do not find these circumstances in the instant case.
[4] Robinson pointed out that the stigma resulting from a wrongfully instituted civil proceeding is not as great as that resulting from a criminal proceeding.
[5] This consisted of a letter from neighboring attorneys which, among other things, offered to run an extension cord across Government Street to supply electricity to Ryland's "Dark" office.