517 So.2d 293 (1987)
Benjamin R. MOORE, Edward C. Moore, and Elaine Moore Lytle
v.
Jack CLARK and Myrtle Reid Clark.
No. CA 86 1178.
Court of Appeal of Louisiana, First Circuit.
November 10, 1987.
*294 A.C. Powell, Hammond, for plaintiffs-appellees.
M.H. Gertler, New Orleans, for defendants-appellants.
Before LANIER, CRAIN and LeBLANC, JJ.
*295 LANIER, Judge.
This is a suit on a contract of sale and mortgage by the vendors of immovable property seeking payment of the balance due on the sale price (as represented by a promissory note) and recognition of their vendors' lien. The defendants-vendees answered the suit and asserted the obligation sued upon was extinguished by payment. The trial court held that the defendants-vendees failed to prove payment and rendered judgment in favor of the plaintiffs-vendors as prayed for. This suspensive appeal followed.

FACTS
In July of 1980, Jack and Myrtle Reid Clark orally agreed to purchase from Benjamin, Edward and Paul Moore four tracts of land, located in Hammond, Tangipahoa Parish, Louisiana. The purchase price was agreed to as $50,000. On or about July 25, 1980, $10,000 in cash was paid on the purchase price. This cash was deposited in the Moore brothers bank account.
The parties executed a sale and mortgage (which was titled a credit deed) dated August 22, 1980, which transferred the property for a stated price of $40,000. By check dated August 25, 1980, payable to Paul Moore, $20,000 was paid on the purchase price. The sale and mortgage recites that the balance due on the purchase price was $20,000, which was to be paid by January 5, 1981. Interest was fixed on the balance due at the rate of 10% per annum from date until paid.
By check payable to Benjamin Moore, dated February 2, 1981, $5,000 was paid on the purchase price. On February 6, 1981, Paul Moore died. By check payable to Benjamin Moore, dated February 19, 1981, $5,000 was paid on the purchase price. This last payment was transmitted with the following letter:
Mr. Benjamin
Enclosed is a check for $5000.00. On 2/2/81 I also gave you a $5000.00 check. On January 12, 1981 I gave Mr. Paul $10,000.00.
Thank you kindly for being patient. As I tried to explain to you Mr. Paul agreed to finance the balance at 12% interest. That was the reason I was not in a hurry to pay the balance.
Will try to see you soon after Mardi Gras.
Sincerely,
Myrtle Clark
The dispute herein centers on whether or not Mrs. Clark paid $10,000 in cash to Paul Moore on January 10, 1981.

ADMISSIBILITY OF ABSENCE OF A BUSINESS RECORD

(Assignment of Error Number 2)
The defendants contend the trial court committed prejudicial error by allowing Benjamin Moore to testify about the contents of a Moore brothers bank statement for the period of December 31, 1980, to January 30, 1981.
At the trial during the testimony of Benjamin Moore, the following occurred:
Q Also I am going to show you the Moore brothers statement from Citizens National Bank from December 31, 1980, through January 30, 1981, and ask if it shows a ten thousand dollar deposit in the month of January of 1981?
A January 19, $1,137.00.
Q But there is no ten thousand dollar deposit made anytime within that period, is there?
A No.
MR. GERTLER:
Your Honor, I am going to object at this point because first of all the statement will speak for itself; secondly, there has been no foundation laid that that statement is a complete statement, that it is authenticated in any way by the bank or the institution from which it comes, and it is being used to suggest something in the case that I think is the essence of the case.
BY MR. POWELL:
Q Is this a statement on the Moore brothers account for that period as shown?
A From December 31 to January 30 of Moore brothers.
*296 Q What years?
A 1980, December, and January, 1981.
Q To the best of your knowledge is that a correct accounting of that statement for that month?
A Yes, sir.
MR. GERTLER:
I am going to object to that, your Honor, in terms of accounting of that statement from the bank.
THE COURT:
I assume that it was sent to him and
MR. GERTLER:
I don't object to whatever accountings he kept or was aware of. I just object to using a document that was prepared by someone else that hadn't been authenticated in any way to have the witness just simply say that that is a correct accounting.
MR. POWELL:
That document is not that important, your Honor. I can just proffer that document.
THE COURT:
I think he would be allowed to say that he received it from the bank without any further authentication of it. I think that would be perfectly all right. Go ahead.
....
As P-6 I would like to offer or at least proffer the statement from Citizens Bank showing that there was no deposit made in the time frame mentioned by her.
It is not clear from the record whether the questioned document was admitted into evidence or merely profferred.[1] The trial court judge does not refer to this evidence in his reasons for judgment, and, thus, we do not know whether or not he considered this evidence in reaching his decision.
Hearsay evidence is defined as testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter. State v. Harris, 444 So.2d 257 (La.App. 1st Cir.1983), writ denied, 445 So.2d 1234 (La.1984) and the cases cited therein. Generally, hearsay evidence is not admissible; however, there are many recognized exceptions to this general rule. One of these is the business records exception. Business records are admissible to prove the facts contained therein if the person offering the record in evidence can establish a predicate showing (1) the persons concerned with recording the information are unavailable for testimony, or production of such persons would be a needless burden, (2) the record is the first writing reflecting the transaction, (3) the records are identified by one familiar with the bookkeeping procedure used by the business keeping the records, and (4) the evidence is reliable. Administration of Tulane Educational Fund v. Waters, 497 So.2d 27 (La.App. 5th Cir.), writ denied, 498 So.2d 16 (La.1986); Thigpen v. Administrator, Office of Employment Security, 488 So.2d 1213 (La.App. 4th Cir.1986); American Supply Co. of Morgan City, Inc. v. Genina Marine Services, Inc., 470 So.2d 964 (La.App. 1st Cir.), writ denied, 475 So.2d 1107 (La.1985).
In D. Binder, Hearsay Handbook, § 8.13 Absence of Entry in Business Record, pp. 172-173 (2d Ed.1983), appears the following:
Evidence that a matter is not contained in a business record, where such matter would ordinarily be recorded if it existed or occurred, may be offered as circumstantial evidence to prove the nonexistence or nonoccurrence of the matter. For example, assume that in the ordinary course of its business Harvard University records and preserves the names of all its graduates. Evidence that the University's records do not list the name of Fred Zilch might be offered as circumstantial evidence from which it can be inferred that Zilch did not graduate from Harvard.
Absence of an entry in a business record may constitute circumstantial evidence, i.e., it tends to prove something by implication, not assertion. Its admissibility is governed by principles of relevance, not hearsay. *297 See also E. Cleary, McCormick's Handbook of the Law of Evidence, § 307, p. 722 (2d Ed.1972); West's Proposed Louisiana Code of Evidence, Comment to Exception (7) of Article 803, p. 156 (1986 Special Pamphlet).
The plaintiffs failed to establish the predicate necessary to admit the bank statement into evidence under the business record exception to the hearsay rule. Thus, we must consider if the bank statement can be used to show an absence of a $10,000 deposit in the Moore brothers account. This evidence was apparently offered as circumstantial evidence to prove by implication that the $10,000 cash payment was not in fact made because it was not deposited in the Moore brothers account. Certainly, Benjamin Moore could testify that the Moore brothers records did not show a $10,000 cash payment or bank deposit. Benjamin Moore could testify that the bank statement was that which was received by Moore brothers. However, we do not believe it was permissible for Benjamin Moore to testify about the accuracy (truthfulness) of the bank statement because he was not a party to its preparation or a custodian of the records used to prepare it. Our review of cases, where the absence of a business record has been relevant, indicates that a custodian of the record, or someone in authority with the owner of the record, is the proper witness to authenticate the records from which the absence of the business record is determined. Cf. State v. Vaughn, 378 So.2d 905 (La.1979); C.M. Masland & Sons v. Charles Carter & Co., Inc., 364 So.2d 197 (La.App. 1st Cir.1978), writ denied, 366 So.2d 563 (La.1979). Benjamin Moore was not such a person, and he could not supply the necessary foundation for the admissibility of the bank statement.
This assignment of error has merit.

SANCTION FOR FAILURE TO COMPLY WITH PRETRIAL PROCEDURE

(Assignment of Error Number 3)
The defendants contend the trial court committed error when it refused to allow Herman and Glenn Reid to testify as defense witnesses.
The record shows that, after Mrs. Clark testified at the trial, the defendants attempted to call Glenn Reid as a witness. Counsel for the plaintiffs objected, asserting the "defendant [sic] has not submitted a pre-trial order naming any witnesses to be called." Counsel for the defendants responded that no pretrial order was submitted by him because the pretrial conference originally scheduled was cancelled and the case was fixed for trial without a pretrial conference being held. The trial court judge observed that "the rules require that a party be notified of the witnesses prior to the day of the trial which would really have nothing to do with a pre-trial order." The trial court judge noted that counsel for the plaintiffs filed a pretrial order in the record and observed that, even though the pre-trial conference may have been continued, "that doesn't excuse the requirement that you file your portion of the pre-trial order including the witnesses and so forth." The trial court judge then ruled that, as a sanction for failure to comply with the pretrial procedure, Glenn and Herman Reid would not be allowed to testify. Their testimony was then submitted by the defendants in a proffer. In his reasons for judgment, the trial court specifically stated he gave no consideration to the preferred testimony.
Our review of the record shows that on August 26, 1985, counsel for the plaintiffs filed a motion to set for trial with the trial court. On August 28, 1985, this motion was amended and signed by the trial court judge to fix a pretrial conference for September 12, 1985. On September 10, 1985, counsel for the plaintiffs filed a pretrial order. This pretrial order does not list the defendants' contentions, the defendants' exhibits or the defendants' witnesses; it does not have the signatures of the defendants' counsel or the trial court judge, and it does not have a blank order to fix the case for trial. There are no court minutes or written motions in the record to show how or when this case was set for trial.
*298 The rules of the Twenty-first Judicial District Court for fixing cases for trial and pretrial conferences (which were adopted on September 14, 1983, and effective January 1, 1984) are set forth, in pertinent part, in West's Louisiana Rules of Court 1987 on pages 380 and 381, as follows:

RULE XI. FIXING OF CASES FOR TRIAL
Section 1. Assignment of civil cases on the merits will be made at Pre-Trial Conferences, unless the judge of the division to which the case has been allotted authorizes an assignment on oral or written motion.

....

RULE XII. PRE-TRIAL CONFERENCE PROCEDURE
Section 1. As soon as notified that the judge has scheduled a Pre-Trial Conference, it shall be the duty of the counsel for the party requesting the conference to promptly arrange a meeting of all counsel in advance of the Pre-Trial Conference for the purpose of arriving at all possible stipulations, exchanging copies of all documents which will be offered in evidence at the trial, preparing a list of the names and addresses of all witnesses (except those to be used for impeachment) who will or may testify at the trial, and for the purpose of preparing for submission to the court the proposed Pre-Trial Order hereinafter described. It shall be the duty of all other counsel involved to facilitate and expedite the holding of this meeting of counsel.
Section 2. On the basis of the contentions made at the meeting of counsel with respect to the matters required to be covered in the Pre-Trial Order, counsel for plaintiff will prepare and submit a proposed Pre-Trial Order to all counsel for parties, who shall promptly indicate to plaintiff's counsel any additions or corrections. The final draft of the proposed Pre-Trial Order shall be approved and signed by all counsel for parties and shall be submitted by counsel for plaintiff to the judge so that he will receive it not later than two full judicial days preceding the day on which the Pre-Trial Conference is to be held. In the event that any attorney disagrees with the proposed Pre-Trial Order, or any part thereof, he shall state his reason therefor and attach his signed statement of opposition to the proposed Pre-Trial Order prior to its submission to the court, but shall nevertheless sign the proposed Pre-Trial Order, which shall under these circumstances be deemed to be approved only to the extent not contemplated in the statement of opposition.
Section 3. The proposed Pre-Trial Order shall set forth:
1. A brief but comprehensive statement of the plaintiff's contentions.
2. A brief but comprehensive statement of the defendant's contentions.

3. A brief but comprehensive statement of the claims of any other parties.
4. Facts established by the pleadings or by stipulations or admissions.
5. A statement setting forth the contested issues of fact.
6. A statement setting forth the contested issues of law.
7. A list and brief description of exhibits (except documents for impeachment) to be offered in evidence by the parties.

8. A statement that the documentary exhibits have been stipulated as to the authenticity or that they have not.
9. A statement as to whether or not there are any anticipated amendments to the pleadings.
10. A list of witnesses (except those called for impeachment) each party may call and a short statement as to the nature (but not as to the content) of their testimony. Except for the witnesses listed, no other witnesses may be called to testify, except for good cause shown.

11. A statement as to any other matters, not coming under the previous headings, which may be relevant *299 to a prompt and expeditious disposition of the case.
12. A designation of Trial Counsel for each party who will be responsible for the case and to whom all communications with respect thereto will be directed.
13. A blank order to fix the case for trial.
Section 4. At the Pre-Trial Conference all counsel must be fully prepared to inform the court on all matters pertinent to the issues. If the designated Trial Counsel is unable to attend the Pre-Trial Conference, he shall send someone in his stead who shall be authorized to enter into stipulations, agreements, admissions of fact or law, and be able to discuss all issues of the case, including the possibility of settlement.
Section 5. In case of failure of any party or counsel for any party to comply with the Pre-Trial Procedure described herein, the court may impose appropriate sanctions.
Section 6. At the conclusion of the Pre-Trial Conference, the judge shall sign the order and it shall thereafter be filed in the suit record.

[Emphasis added.]
Rule XI (1) provides that a judge of the Twenty-first Judicial District Court can fix a case for trial without conducting a pretrial conference. That is apparently what was ultimately done in the instant case. Since the case was ordered to trial without a pretrial conference, there was no requirement that the parties comply with the pretrial conference procedure of Rule XII. The trial court judge committed legal error when he held that the defendants were required to comply with Rule XII after he fixed and held the trial when the pretrial conference was continued.
Further, even if Rule XII was applicable in this factual posture, the failure of counsel for the defendants to comply with the rule is obviously based, in part, on the failure of counsel for the plaintiffs to comply with the rule. There is nothing in the record to show that counsel for the plaintiffs promptly arranged a meeting with counsel for the defendants to exchange evidence and prepare the pretrial order or that counsel for the plaintiffs submitted a completed pretrial order to counsel for the defendants prior to its filing to obtain opposing counsel's signature thereon and his approval or opposition thereto. In this factual and procedural posture, the sanction of excluding the testimony of the witnesses is an abuse of discretion.
This assignment of error has merit.

ALTERATION OF RECEIPT

(Assignment of Error Number 1[A] and [D])
The defendants assert the trial court committed error by allowing the plaintiffs, for the first time in brief after the trial, to question the authenticity of the receipt and assert it was altered.
When counsel for the defendants attempted to file the receipt in evidence, the following occurred:
MR. GERTLER:
Your Honor, in connection with the testimony of this witness, I would like to offer, introduce, and file into evidence the receipt marked D-1.
MR. POWELL:
We object to the introduction of that receipt as being totally hearsay.
MR. GERTLER:
I don't think it is hearsay. It is in connection with testimony that was given by the witness. It was identified as authentic by your client and by Mrs. Clark in terms of who signed it.
THE COURT:
I am going to admit it subject to the objection. She has identified it. The objection would go to the weight of it rather than the admissibility of it.
[Emphasis added.]
However, in his reasons for judgment, the trial court judge ruled as follows:
The Court is of the further opinion that the question of authenticity and/or alteration of the receipt allegedly dated 1/10/81 was properly raised by the plaintiff.

*300 The Court is of the further opinion that defendant, pursuant to the provision of R.S. 15:458, is required to account for alterations that operate as a substantial change of such instrument. The instrument in question was altered. Even the simplest non-professional examination of this instrument shows substantial changes. The defendant did not, to the satisfaction of this court, explain or account for the changes.
[Emphasis added.]
Although it is not completely clear, apparently the trial court, after the trial, allowed the plaintiffs to question the admissibility of the receipt into evidence on the ground that it was substantially altered. La.R.S. 15:458, cited by the trial court, provides as follows:
§ 458. Condition precedent to receipt of altered instrument as evidence
The party relying upon a written instrument must, before such instrument is receivable in evidence, satisfactorily account for any erasure or interlineation which operates a substantial change of such instrument.
[Emphasis added.]
La.R.S. 15:458 applies before a written instrument is admitted into evidence and requires the party offering the instrument to satisfactorily account for any erasure or interlineation which substantially changes the instrument if the admissibility of the instrument is questioned on that basis. At the trial, the plaintiffs only asserted a hearsay objection to the admissibility of the receipt; the defendants did not object to the admissibility of the receipt on La.R.S. 15:458 grounds. La.C.C.P. art. 1635 requires that "a party, at the time the ruling ... of the court is made or sought" must make "known to the court ... his objection to the action of the court and his grounds therefor" to preserve the objection. [Emphasis added.] A party cannot later assert a ground for objection to the admission of evidence which was not made at the trial. Cooper v. Ami, Inc., 454 So.2d 156 (La.App. 1st Cir.), writ denied, 459 So.2d 539 (La.1984); Calderon v. Johnson, 453 So.2d 615 (La.App. 1st Cir.1984).
The trial court's ruling that the receipt was not admissible into evidence because of La.R.S. 15:458 is wrong as a matter of law. The objection based on La.R.S. 15:458 grounds was not timely raised. Because the trial court allowed the plaintiffs to raise this objection to admissibility after the trial was completed, the defendants were denied the opportunity to present evidence to refute it, to their obvious prejudice.
Further, this erroneous ruling altered the order and burden of proof. Initially, the plaintiffs had the burden of proving the obligation sued on by a preponderance of the evidence. Once the plaintiffs established a prima facie case, the burden shifted to the defendants to prove their affirmative defense of payment by a preponderance of the evidence. La.C.C.P. art. 1005; Harrigan v. Freeman, 498 So.2d 58 (La. App. 1st Cir.1986); Red Barn Chemicals, Inc. v. Lassalle, 350 So.2d 1315 (La.App. 3rd Cir.1977); Fontenot v. LaFleur, 281 So.2d 868 (La.App. 3rd Cir.), writ not considered, 284 So.2d 336 (La.1973). The defendants sought to prove payment with the receipt and other evidence. La.R.S. 15:460 provides as follows:
Any document, other than an authentic act, may be proved by any one who saw it written, or by a comparison of hands, or by any one who, from his knowledge of the handwriting of the person alleged to have written the document can testify that the document produced is in the handwriting of said person.
Mrs. Clark testified she wrote out the receipt in her own hand and Paul Moore signed it in her presence. She also testified that Larry Robertson signed the receipt as a witness. Benjamin Moore, in his testimony, identified Paul Moore's signature on the receipt. This testimony properly authenticated the receipt for purposes of admissibility in the absence of a La.R.S. 15:458 objection. The real thrust of the plaintiffs' assertions do not pertain to the admissibility of the receipt. The plaintiffs attack the genuineness of the receipt and contend that no weight should be given to it. The burden of proving that the receipt *301 is a forgery is on the plaintiffs. La.R.S. 15:439; Meyer v. State, Dept. of Public Safety License Control and Driver Improvement Division, 312 So.2d 289 (La. 1975); Gustafson v. Koch, 460 So.2d 655 (La.App. 1st Cir.1984).[2]
Finally, La.R.S. 15:458 is limited by its own terms to erasures and interlineations which operate a substantial change. A review of the receipt reveals no erasures, although the paper is torn across the top.[3] There is one interlineation which appears to be in a color ink different from the rest of the receipt and which provides "(land at Blackburn & Pecan Street)". However, the receipt also recites: "See reverse side for description." On the reverse side of the receipt is a partial copy of a survey plat showing, among other things, the intersection of Blackburn Road and Pecan Street. At the trial, Mrs. Clark testified she added in the interlineation after she wrote the receipt. The issue in this case is whether or not the $10,000 payment was made on January 10, 1981. The interlineation of the property description by street location was not a substantial change for the purpose of determining whether the $10,000 was paid because the receipt is dated "1/10/81" and states it is for $10,000 cash.[4] There is no claim that a $10,000 payment was made for another purpose.
These portions of assignment of error number 3 have merit.

STANDARD FOR APPELLATE REVIEW OF FACTS AND REMAND
In the conclusion of their brief, the defendants request a reversal with a judgment rendered in their favor, or, in the alternative, a reversal with a remand for a new trial.
The errors committed by the trial court in the fact-finding process are recapitulated as follows:
(1) improper admission of bank statement into evidence;
(2) improper exclusion of the testimony of Glenn and Herman Reid;
(3) improper application of La.R.S. 15:458 to exclude receipt from evidence in post-trial setting; and
(4) improper shifting of burden of proof of improper alteration and/or forgery.
The admission into evidence of the bank statement was not prejudicial error. The bank statement was offered to show that $10,000 was not deposited in the Moore brothers bank account during the period of December 31, 1980, through January 30, 1981. This absence of a deposit would be circumstantial evidence that the $10,000 cash payment was not made on January 10, 1981. However, Benjamin Moore testified Paul Moore never told him about a $10,000 payment in January of 1981, and the Moore brothers records indicated the Clarks still owed $10,000 on the note. In addition, Elaine Moore Lytle, Paul Moore's daughter and sole heir, testified she checked Paul's personal and business records and found no record of a $10,000 payment from the Clarks in January of 1981. In this evidentiary posture, the admission of the bank statement is merely cumulative circumstantial evidence of the absence of a Moore brothers record of a $10,000 payment. This error did not interdict the fact-finding process.
However, we believe the other errors did. The plaintiffs' case is based on the circumstantial evidence that Paul Moore never told Benjamin Moore about the payment, the Moore brothers records do not show a payment and Paul Moore's records do not show a payment. Because Paul Moore is deceased, there is no direct evidence that no payment was made to him. Where circumstantial evidence is relied upon, such evidence, taken as a whole, must exclude every other reasonable hypothesis *302 with a fair amount of certainty to be sufficient. Lacey v. Louisiana Coca-Cola Bottling Company, Ltd., 452 So.2d 162 (La.1984). There are only two reasonable factual possibilities in this case: (1) the receipt is a forgery and Paul Moore did not receive the payment, or (2) the receipt is valid and Paul Moore did not deposit the money or otherwise record receiving it.
The defense is based on the direct evidence of (1) the testimony of Mrs. Clark that she paid the $10,000 in cash to Paul Moore in an automobile outside her apartment in Hammond, Louisiana, on January 10, 1981, and that Paul Moore gave her a receipt for the payment, and (2) the receipt itself which is admitted by the parties to be written by Mrs. Clark and signed by Paul Moore. Mrs. Clark's testimony would be partially corroborated by her brothers, Glenn and Herman Reid, who testified on proffer that in January of 1981 on a Saturday, they drove to Mrs. Clark's apartment in Hammond, they observed Mrs. Clark counting out cash money to Paul Moore in an automobile, that Glenn talked to Larry Robertson and Mrs. Clark called Larry Robertson over to the car.
In this factual and procedural posture, the credibility of Mrs. Clark and her brothers and the genuineness of the receipt are crucial and determinative. These determinations are made more critical because neither side called Larry Robertson as a witness or presented expert testimony about the genuineness of the receipt. The improper exclusion of the corroborating testimony of Mrs. Clark's brothers, the improper exclusion of the receipt from evidence and the improper placing of the burden of proving that the receipt was not forged (a negative) on the defendants are prejudicial errors.
However, because Louisiana appellate courts have jurisdiction over the facts in a civil case, such prejudicial errors do not necessarily require a remand. La. Const. of 1974, art. V, § 10; La.C.C.P. art. 2164. Ordinarily, trial court findings of fact are reviewed on appeal under the manifest error (clearly wrong) standard. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978). However, where one or more trial court legal errors interdict the trial court's fact-finding process, the manifest error (clearly wrong) standard is no longer applicable, and, if the record is otherwise complete, the appellate court can make its own independent (de novo) review of the record and determine a preponderance of the evidence. McLean v. Hunter, 495 So.2d 1298 (La.1986); Picou v. Ferrara, 483 So.2d 915 (La.1986); Suhor v. Gusse, 388 So.2d 755 (La.1980) and the cases cited therein. However, where the weight of the evidence is nearly equal and a firsthand view of the witnesses is essential to a fair resolution of conflicting evidence, the case should be remanded for a new trial. Ragas v. Argonaut Southwest Insurance Co., 388 So.2d 707 (La.1980); A.F. Blair Company, Inc. v. Haydel, 504 So.2d 1044 (La.App. 1st Cir.1987); Tabor v. Doctors Memorial Hospital, 501 So.2d 243 (La.App. 1st Cir.1986); Ryland v. Law Firm of Taylor, Porter, Brooks, and Phillips, 496 So.2d 536 (La. App. 1st Cir.), writ denied, 497 So.2d 1388 (La.1986).
The record herein is complete. However, the weight of the evidence is nearly equal, and a firsthand view of the appearance and demeanor of the witnesses is essential to fairly resolve the crucial credibility issues. Further, the record may lack important evidence because the burden of proving the falsity of the receipt was not properly placed on the plaintiffs. This erroneous trial court ruling was not made until after the trial was over. Had the plaintiffs known at trial they had the burden of proof on this issue, they may have presented evidence concerning it. Had the plaintiffs done so, the defendants may have presented evidence to refute that of the plaintiffs. Although a remand for a retrial on the facts is not in the interest of judicial economy, it appears to be the only fair and just thing to do under the particular facts and circumstances of this case.

DECREE
For the foregoing reasons, the judgment of the trial court is reversed, and this action *303 is remanded to the trial court for a new trial in accordance with the views expressed herein.[5] The cost of this appeal is to be divided equally between the plaintiffs and defendants.
REVERSED AND REMANDED.

NOTES
[1] The bank statement is marked "Proffer PI. 1" and "FILED IN EVIDENCE April 10, 1986".
[2] We do not wish to imply that the plaintiffs cannot argue lack of genuineness from the receipt itself. We do wish to observe that there is a distinction between the admissibility of a document and the weight given it by the fact finder.
[3] A copy of the receipt is attached hereto as Appendix A.
[4] In his reasons for judgment, the trial court judge stated that "the simplest non-professional examination of this instrument shows substantial changes" but did not specify what those changes were or how they were substantial.
[5] Because we remand for a new trial, it is unnecessary to rule on assignment of error number 1[B] and [C] relating to the sufficiency of the evidence of the parties.