PETTIGREW, J.
| ¡.This matter is before us on appeal from a September 4, 2013 judgment of the trial court ordering the disbursement of the funds on deposit in the registry of the court to plaintiff. For the reasons that follow, we affirm.
FACTS AND PROCEDURAL HISTORY
The present appeal stems from a contract dispute between plaintiff, Shin Chang Hu, and defendants, Yi Hua and Fang Hua. In a prior decision by this court, a May 18, 2011 judgment, in favor of Mr. Hu in the amount of $285,180.98, plus judicial interest from December 14, 2007 (the date the suit was originally filed), was affirmed. Shih Chang Hu v. Evergreen of the South, Inc., 2011-2170 (La.App. 1 Cir. 12/17/12), 2012 WL 6570679 (unpublished), unit denied, 2013-0750 (La.5/17/13), 118 So.3d 379 {“Hu I”). During the pendency of the prior case, Mr. Hu obtained an ex parte writ of attachment without bond, authorizing the seizure of the Huas’ family home, located at 3822 Windsong Drive in Baton Rouge. Subsequently, when the Huas sold their home in 2009, after paying closing costs and the balance owed on an existing mortgage, the net proceeds of the sale ($101,587.93) were deposited into the registry of the court. Mrs. Hua filed a motion to dissolve the writ of attachment and withdraw the deposit from the registry of the court. These matters proceeded to a hearing before the trial court on December 9, 2009, at which time the trial court denied Mrs. Hua’s motion, but ordered that Mr. Hu supply a security bond for the writ.[1]
Included in the trial court’s original judgment in the prior suit was an order by the trial court that the East Baton Rouge Parish Clerk of Court release the funds being held in the registry of the court to Mr. Hu. Immediately, upon receiving notice of the signing of the judgment by the trial court in Hu I, counsel for the Huas, Robert Talley, attempted to intervene, claiming a first rank priority and privilege over the funds on deposit in the ¡^registry of the court. Citing La. R.S. 37:218, Mr. Talley argued he was entitled to a first rank priority and privilege superior to all other privileges and security interests for the amount of his contractual attorney fees and expenses.[2] Subsequently, after the *3 Louisiana Supreme Court denied writs in Hu I, the dispute over the money in the registry of the court continued.
On May 28, 2013, Mrs. Hua filed a “Motion To Determine Rank, Priority And Privilege Of Funds On Deposit In The Registry Of The Court,” requesting that the trial court “determine the proper and appropriate legal rank, priority and privilege of all competing claims to the $101,587.93 funds on deposit in the registry of the court.” Also, on that same date, Mrs. Hua filed a “Motion To Dissolve Attachment And Motion To Withdraw Deposit From The Registry Of The Court,” maintaining that her homestead exemption rights, pursuant to La. R.S. 20:1(A)(2), should be recognized and that she be permitted to withdraw the first $35,000.00 of the funds on deposit in the registry of the court. On May 29, 2013, Mr. Hu filed a “Motion For Disbursement of Registry Funds,” requesting that the entirety of the amount within the registry of the court be disbursed to him because it was less than the total amount of the judgment owed.
These matters were originally set for contradictory hearing on August 26, 2013, at which time all of the motions were continued to September 3, 2013. After listening to |4brief arguments from respec-five counsel at the September 3, 2013 hearing, the trial court stated as follows:
I’m taking into account everything everybody has submitted.
[[Image here]]
I’m going to take into account the arguments too so — all right. So where we are on this is, I agree with the [plaintiff] in this matter that they are entitled to the entirety of it [the $101,587.93] — I’m going to sign the judgment attached to the motion for disbursement [of] registry of funds that was filed on May 29th by the plaintiff.... I am going to sign it ... and send it through processing.
Mr. Talley asked for a temporary stay of the distribution of the funds pending an appeal, but the trial court repeatedly denied his request. The trial court signed an order that same day that read, in pertinent part, as follows:
IT IS ORDERED, ADJUDGED AND DECREED that the funds being held in the Registry of Court in the amount of $101,587.93, plus interest of $514.01 [be] and are hereby disbursed as follows:
The amount of $115,370.56 made payable to: Shih Chang Hu, and his attorneys of record, Dodson, Hooks & Frederick, BPF
*4 On September 4, 2018, the trial court signed an amended order[3] as follows:
IT IS ORDERED, ADJUDGED AND DECREED that the funds being held in the Registry of Court in the amount of $101,587.93, plus any and all accrued interest on said sum from the date of deposit until the date of disbursal, be and are hereby disbursed to:
Shih Chang Hu, and his attorneys of record, Dodson, Hooks & Frederick, BPF
It is from this judgment that Mrs. Hua has appealed, assigning the following specifications of error:
1. The trial court erred in failing to properly rank and prioritize all competing claims to the $101,587.93 in funds on deposit in the Registry of the Court, and failing to appropriately recognize Appellants’ legal interests in such funds.1[4]
|s2. The trial court erred in summarily denying Appellants an evidentiary hearing and due process right to claim a privilege and priority on the $101,587.93 in funds on deposit in the Registry of the Court, summarily ordering all funds in the Registry of the Court disbursed to Plaintiff/Appellee judgment creditor Shih Chang Hu, and refusing to stay release of the deposited funds pending adjudication of Appellants’ interest in the funds.
DISCUSSION

Failure of Trial Court to Conduct Proper Hearing (Assignment of Error No. 2)

In her second assignment of error, Mrs. Hua argues that it was error for the trial court to order the funds distributed to Mr. Hu without conducting a proper contradictory hearing. Mrs. Hua asserts that although she appeared at the hearing on September 3, 2013, with witnesses and evidence prepared to prove her entitlement to the funds in the registry of the court, the trial court ruled from the bench after hearing only argument from respective counsel. We agree with Mrs. Hua that the trial court erred in not conducting a proper contradictory hearing before rendering judgment.
The hearing in this matter was set pursuant to the “Motion To Determine Rank, Priority And Privilege Of Funds On Deposit On The Registry Of The Court” filed by Mrs. Hua. As the relief requested by Mrs. Hua in her motion was not something to which she was clearly entitled and which required supporting proof, the matter was required to be decided contradictorily with any other party claiming an interest, priority, or privilege upon the funds on deposit in the registry of the court. See Searles v. Searles, 2008-1098, p. 3 (La.App. 1 Cir. 3/27/09), 9 So.3d 997, 998; La.Code Civ. P. art 963.[5]
*5 The September 3, 2013 transcript and minutes from said hearing confirm that the trial court received no evidence and heard no witnesses prior to ruling that Mr. Hu |fiwas entitled to all the funds in the registry of the court. Rather, at some point later that same day, the parties appeared for the purposes of a proffer hearing. Four witnesses testified, and several documents were introduced into the record. Thus, we can only surmise that during the initial hearing on September 3, 2013, wherein the trial court heard arguments only, the trial court ruled against the admissibility of this evidence. La.Code Civ. P. art. 1636.[6]
Our review of the September 3, 2013 hearing transcript reveals no mention of the proffer hearing by either the trial court or any of the parties. The only reference we can even find to a “witness” came during a discussion between Mr. Talley and the trial court concerning the accuracy of the judgment prepared by counsel for Mr. Hu. After the trial court advised the parties that it was “going to sign the judgment attached to the motion for disbursement [of] registry of funds that was filed on May 29th by the plaintiff,” the following colloquy occurred:
MR. TALLEY: Judge, might I object?
THE COURT: Sure.
MR. TALLEY: ... the ex-parte motion that [counsel for Mr. Hu] filed ... suggested to the court that the monies in the registry of the court gather judicial interest, legal interest from date of deposit and he actually calculated that amount and put that in the order and that is from the 17standpoint of the clerk, that is expressly erroneous. The monies in the registry of the court do not and have never gathered legal interest or judicial interest. So the figures are inherently wrong on that judgment. The court is free to sign it, but it is wrong and we actually — I had procured a witness from the registry clerks office to—
THE COURT: I’m going to sign the judgment, I’m going to sign the judgment.
MR. TALLEY: Your Honor, can I ask that the distribution of the funds be stayed pending appellate review?
THE COURT: No. No. I’m signing the judgment, we’re disbursing it. We’ve *6 been through the appellate process already. So I will sign the judgment that has previously been submitted. Thank you, gentlemen.
Nonetheless, the parties apparently returned to the trial court later that same day for the proffer hearing. According to Mrs. Hua’s appeal brief, this hearing “occurred outside the presence of the trial judge, after the conclusion of his rule docket.” We find nothing in the record to contradict Mrs. Hua’s recollection of the events of the day. In fact, although the cover sheet of the transcript of the September 3, 2013 proffer hearing references “The Honorable Timothy E. Kelley, Judge Presiding,” there is no indication in the transcript that Judge Kelley was actually present during the proffer hearing.
The jurisprudence indicates that when legal error is found and a complete record has been made, the appellate court is to conduct a de novo review of the record, including the proffered evidence. Holliday v. Holliday, 2000-0533, p. 7 (La.App. 1 Cir. 8/17/01), 795 So.2d 423, 429. In considering this record, we recognize that this court is “authorized and, indeed, required to render a judgment ‘which is just, legal, and proper upon the record on appeal.’” Jackson Nat. Life Ins. Co. v. Kennedy-Fagan, 2003-0054, p. 5 (La.App. 1 Cir. 2/6/04), 873 So.2d 44, 48, writ denied, 2004-0600 (La.4/23/04), 870 So.2d 307. However, “[tjhere are cases where the weight of the evidence is so nearly equal that a first-hand view of witnesses is essential to a fair resolution of the issues.” Ragas v. Argonaut Southwest Ins. Co., 388 So.2d 707, 708 (La.1980). Where such a need arises, “the case should be remanded for a new trial.” Landry v. Bellanger, 2002-1443, p. 15 (La.5/20/03), 851 So.2d 943, 954. It is the duty of the appellate court to determine when “the court can fairly find a ^preponderance of the evidence from the cold record,” or whether the case should be remanded. Id.
In the case before us, the record is complete, and a remand for another hearing on the motion is not in the interest of judicial economy. Thus, we will review the record, including the proffered evidence, de novo and determine a preponderance of the evidence. See Moore v. Clark, 517 So.2d 293, 302 (La.App. 1 Cir.1987).

Applicability of Homestead Exemption (Assignment of Error No. 1)

Mrs. Hua argues on appeal that the first $35,000.00 of the funds on deposit in the registry of the court belong to her pursuant to her homestead exemption rights. In response, Mr. Hu contends that the homestead exemption issue was abandoned by Mrs. Hua as the issue was not raised until well after the May 18, 2011 judgment was final. Although there may be some validity to Mr. Hu’s abandonment argument, we have nonetheless considered the homestead exemption issue in our de novo review of the record and find that Mrs. Hua has effectively waived her homestead exemption in this case.
Homestead exemption is provided for in La. R.S. 20:1, which sets forth, in pertinent part, as follows:
A. (1) The bona fide homestead consists of a residence occupied by the owner and the land on which the residence is located, including any building and appurtenances located thereon, and any contiguous tracts up to a total of five acres if the residence is within a municipality, or up to a total of two hundred acres of land if the residence is not located in a municipality.
(2) The homestead is exempt from seizure and sale under any writ, mandate, or process whatsoever, except as provided by Subsections C and D of this Section. This exemption extends to *7 thirty-five thousand dollars in value of the homestead, except in the case of obligations arising directly as a result of a catastrophic or terminal illness or injury, in which case the exemption shall apply to the full value of the homestead based upon its value one year before such seizure. This homestead exemption from seizure and sale shall extend automatically to the proceeds from any property insurance policy received as a result of damage caused by a gubernato-rially declared disaster to a homestead and that are held separately in an escrow account identified as insurance proceeds paid from the damage of a homestead for its repair or replacement.
[[Image here]]
IflC. This exemption shall not apply to any of the following debts:
(1) For the purchase price of property or any part of such purchase price.
(2) For labor, money, and, material furnished for building, repairing, or improving the homestead.
(3) For liabilities incurred by any public officer, or fiduciary, or any attorney at law, for money collected or received on deposits.
(4) For taxes or assessments.
(5) For rent which bears a privilege upon said property.
(6) For the amount which may be due a homestead or building and loan association for a loan made by it on the security of the property; provided, that if at the time of making such loan the borrower be married, and not separated from bed and board from the other spouse, the latter shall have consented thereto.
(7) For the amount which may be due for money advanced on the security of a mortgage on said property; provided, that if at the time of granting such mortgage the mortgagor be married, and not separated from bed and board from the other spouse, the latter shall have consented thereto.
(8)For any obligation arising from the conviction of a felony or misdemean- or which has the possibility of imprisonment of at least six months.
D. The right to sell voluntarily any property that is exempt as a homestead shall be preserved, but no sale shall destroy or impair any rights of creditors thereon. Any person entitled to a homestead may waive same, in whole or in part, by signing a written waiver thereof; a copy of such waiver shall be provided to the homeowner; however, if the person is married, and not separated from bed and board from the other spouse, then the waiver shall not be effective unless signed by the latter, and all such waivers shall be recorded in the mortgage records of the parish where the homestead is situated. However, if the homestead is the separate property of one of the spouses, the homestead exemption may be waived by that spouse alone in any mortgage granted on the homestead, without the necessity of obtaining a waiver from the non-owning spouse. The waiver may be either general or special and shall have effect from the time of recording. The waiver shall not be required or permitted for the rendering of medical treatment, medical services, or hospitalization. Notwithstanding any other provision of law to the contrary, a waiver of exemption from seizure as to an exempted homestead shall automatically include insurance for that property to the extent subject to the creditor’s mortgage or security interest.
According to the record, Mrs. Hua voluntarily sold her home on September 2, 2009. The HUD-1 Settlement Statement reflects a sales price of $213,000.00 with *8 $213,164.38 listed as the gross amount due to the seller. After settlement charges of 11ft$17,510.00 and parish taxes in the amount of $1,028.86 were paid, the funds remaining were $194,625.52. Of that amount, there was a payoff to Wells Fargo Home Mortgage, Inc. (“Wells Fargo”) in the amount or $93,037.59, with the remaining $101,587.93 being deposited into the registry of the court. Thus, it is clear that prior to depositing the funds from the sale of her home into the registry of the court, Mrs. Hua paid off an existing mortgage with Wells Fargo. Presumably, this meant that either the Wells Fargo mortgage contained a waiver of the homestead exemption by Mrs. Hua or that by voluntarily paying off the Wells Fargo mortgage out of the funds she received from the sale of her home, Mrs. Hua effectively waived the homestead exemption in favor of Wells Fargo. Either way, the entire amount of the homestead exemption, $35,000.00, went to satisfy that claim. Accordingly, there is no merit to Mrs. Hua’s argument that the first $35,000.00 of the funds on deposit in the registry of the court belong to her based on her homestead exemption rights.
CONCLUSION
For the above and foregoing reasons, we affirm the trial court’s September 4, 2013 judgment. All costs associated with this appeal are assessed against defendant-appellant, Fang Hua.
AFFIRMED.
McCLENDON, J., dissents and assigns reasons.

. Mrs. Hua unsuccessfully applied for writs to this court and to the Louisiana Supreme Court following the trial court's denial of her motion to dissolve the writ of attachment. Shih Chang Hu v. Evergreen of the South, d/b/a Taste of China Restaurant and Yi Hua and Fang Hua, 2010-0044 (La.App. 1 Cir. 2/17/10) (unpublished writ action), writ denied, 2010-0653 (La.5/28/10), 36 So.3d 249. We note that the issue of homestead exemption was not raised by Mrs. Hua in this prior attempt to dissolve the writ of attachment.

. On May 31, 2011, the trial court signed an order denying Mr. Talley’s petition of intervention, noting as follows: "Denied. Final judgment previously entered. No substantive alteration can be made post signing of judgment. Thus, this is appealable issue at best." On. November. 21, 2011, this court granted Mr. Talley's writ application from the trial court’s May 31, 2011 judgment, finding that it was an appealable judgment and remanding the matter to the trial court with an order that the trial court grant Mr. Talley an appeal. Mr. Talley was ordered to "submit an order of *3 appeal to the district court within thirty days” of this court’s action on the writ. Shih Chang Hu v. Evergreen of the South, Inc., 2011-1195 (La.App. 1 Cir. 11/21/11) (unpublished writ action). At a subsequent trial court hearing on September 3, 2013, the trial court considered a "Motion to Dismiss Appeal" filed by the Clerk of Court against Mr. Talley for failure to pay estimated appeal costs. At said hearing, the trial court denied the motion to dismiss the appeal, but ordered that Mr. Talley complete a designation of the record for his appeal within fifteen days so that the appeal could proceed forward. There is nothing in the record to indicate that Mr. Talley ever complied with this order or perfected an appeal of the trial court’s denial of his request to intervene. Thus, the trial court’s May 31, 2011 judgment is final, and Mr. Talley is not a proper party to these proceedings. Although Mr. Talley was granted a devolutive appeal by the trial court in this matter, we find that he is not properly before us as an appellant. Accordingly, we pretermit consideration of the issue he raises on appeal with regard to his legal fee; i.e., that he is entitled to first rank priority and privilege over the funds on deposit in the registry of the court to the extent of his contractual attorney fees and expenses, with interest from the date of withdrawal. See Mike M. Marcello, Inc. v. Louisiana Gaming Control Bd., 2004-0488, pp. 4-7 (La.App. 1 Cir. 5/6/05), 903 So.2d 545, 547-549; La.Code Civ. P. art. 2086.

. Mrs. Hua and Mr. Talley both applied to this court for supervisory writs and a stay of the trial court's September 4, 2013 order. This court's action was the same for both parties, i.e., "WRIT DENIED. REQUEST FOR STAY DENIED." Shih Chang Hu v. Evergreen of the South, Inc., 2013-1545, 2013-1546 (La.App. 1 Cir. 9/9/13) (unpublished writ actions).

. As previously indicated, Mr. Talley is not properly before us as an appellant. Thus, we will not address any arguments related to whether the trial court erred in failing to recognize his legal interests in the funds in question.

.Louisiana Code of Civil Procedure article 963 provides, in pertinent part, as follows:
If the order applied for by written motion is one to which mover is clearly entitled without supporting proof, the court may grant the order ex parte and without hearing the adverse party.
If the order applied for by written motion is one to which the mover is not clearly entitled, or which requires supporting *5 proof, the motion shall be served on and tried contradictorily with the adverse party.

. Louisiana Code of Civil Procedure article 1636 provides as follows:
A. When the court rules against the admissibility of any evidence, it shall either permit the party offering such evidence to make a complete record thereof, or permit the party to make a statement setting forth the nature of the evidence.
B. At the request of any party, the court may allow any excluded evidence to be offered, subject to cross-examination: on the record during a recess or such other time as the court shall designate; or by deposition taken before a person authorized by Article 1434 within thirty days subsequent to the exclusion of any such evidence or the completion of the trial or hearing, whichever is later. When the record is completed during a recess or other designated time or by deposition, there will be no necessity for the requesting party to make a statement setting forth the nature of the evidence.
C. In all cases, the court shall state the reason for its ruling as to the inadmissibility of the evidence. This ruling shall be reviewable on appeal without the necessity of further formality.
D. If the court permits a party to make a complete record of the evidence held inadmissible, it shall allow any other party the opportunity to make a record in the same manner of any evidence bearing upon the evidence held to be inadmissible.
Although there is no specific ruling In the record by the trial court concerning the proffer, it is clear from the transcript of the initial September 3, 2013 hearing that the trial court did not consider' the proffered evidence in making its decision herein.